THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN J. MORRISSEY, Respondent, *v.* RHINELANDER WALDO, as Police Commissioner of the City of New York, Appellant.

New York (city of) — dismissal of police officer upon charges preferred against him, after hearing before police commissioner — when Appellate Division has no power to review and reverse determination of police commissioner.

Charges were preferred against relator, a police officer of the city of New York, for " conduct unbecoming an officer and committing a criminal offense," in that, by careless handling of a revolver, he caused it to be discharged, thereby inflicting injuries upon another policeman from which death ensued. The police commissioner determined that the facts, which are undisputed, sustained the charge and dismissed the relator from the force. The Appellate Division reversed this determination on the ground that it is against the evidence and directed that the relator be reinstated. *Held*, that, in determining that the conduct of the relator was of such a nature as to require his punishment to the end that the morale and discipline of the department might be preserved, the police commissioner exercised a discretion not subject to judicial review; that there is nothing in the record to call for the exercise by the Appellate Division of its discretionary powers; that the relator on the uncontradicted evidence was guilty of the acts stated in the specifications, and that the extent of the penalty to follow is not a subject of judicial review.

*People ex rel. Morrissey* v. *Waldo*, 161 App. Div. 955, reversed.

(Submitted June 4, 1914; decided June 16, 1914.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered March 20, 1914, which annulled a determination of the defendant dismissing the relator from the police force of the city of New York and directed his reinstatement.

The facts, so far as material, are stated in the opinion.

*Frank L. Polk*, Corporation Counsel (*James D. Bell* and *Charles J. Druhan* of counsel), for appellant. The sufficiency of the excuse offered by the relator in palliation of his conduct was addressed solely to the judgment and discretion of the police commissioner and his unfavorable consideration of that excuse presented no question of fact for determination by the Appellate Division. (*People ex rel. Masterson* v. *French*, 110 N. Y. 494; *People ex rel. Hogan* v. *French*, 119 N. Y. 493; *People ex rel. O'Callahan* v. *French*, 123 N. Y. 636; *People ex rel. Cunningham* v. *Bingham*, 134 App. Div. 602.)

*Jacob Rouss* for respondent. Offenses against the rules of the police department are quasi-criminal in their character, and are intended to prevent and punish willful and corrupt violations of the rules and duty. There must in all cases be an evil intent and a wicked design of some character before the commissioner is justified in taking away the life position of an officer. (*People ex rel. Hogan* v. *French*, 119 N. Y. 493; *People ex rel. Roe* v. *McClave*, 57 Hun, 141; *People ex rel. McAuley* v. *Baker*, 139 App. Div. 148; *People ex rel. Trayor* v. *Bingham*, 126 App. Div. 178; *People ex rel. Madigan* v. *Sturgis*, 110 App. Div. 1.) Even if it were conceded that the specification herein is true, nevertheless it does not constitute conduct unbecoming an officer and a criminal offense, as charged. (*People ex rel. Sesselman* v. *Bingham*, 189 N. Y. 104.)

CARDOZO, J. The relator, a patrolman in the police department of the city of New York, has been charged

[212 N. Y.]          Opinion, per CARDOZO, J.          [June,

with "conduct unbecoming an officer and committing a criminal offense." The specification is that on February 21, 1912, while in the sitting room of the thirty-ninth precinct station house he "did take from the hip pocket of Patrolman Thomas J. Fitzpatrick * * * a 38 calibre regulation revolver, and by the careless handling of said revolver caused the same to be discharged, inflicting injuries on said Patrolman Fitzpatrick from which death ensued."

The relator and Fitzpatrick were brother officers and friends. Their tour of duty was over, and they went to the dormitory to change their clothes. Fitzpatrick showed the relator a revolver, and said that it was out of order. The relator pulled the trigger and found that it would not work. Fitzpatrick took the revolver back and put it, so the relator says, in his hip pocket. The relator then dressed and went down stairs, and found Fitzpatrick at the washstand. Protruding from the hip pocket was a revolver, which the relator supposed was the broken one. In fact it was another revolver. The broken one, if it had been put in that pocket at all, had been taken out and was in the pocket of a coat. The relator urged Fitzpatrick to hurry up; and going to the washstand, drew the protruding revolver out of his friend's hip pocket and pulled the trigger. The next instant there was a loud report, and Fitzpatrick was shot. On the day following he died.

These facts are not disputed. The police commissioner held that they sustained the charge and dismissed the relator from the force. The Appellate Division, by a divided court, reversed his determination and directed that the relator be reinstated. The grounds of the decision are not stated in the order. A memorandum opinion states, however, that the determination is annulled on the ground that it is against the evidence. Since the evidence is not contradicted, this must mean that the relator's conduct did not justify his dismissal.

In our opinion, the ruling of the Appellate Division is not to be sustained. We have nothing to do with the measure of the punishment inflicted on the relator. That is a matter for the commissioner. Our concern is solely with the question of the relator's guilt. To sustain his reinstatement we must be prepared to hold that even a fine would have been unwarranted. That he did the acts charged against him in the specifications is not disputed. That those acts might properly be found by the commissioner to make out official delinquency does not seem to us to be doubtful. The relator shot and killed a brother officer by the careless use of a revolver. The discharge of loaded firearms in the innocent belief that they are not loaded, or that for some other reason they are harmless, is notoriously a frequent occasion of the loss of life and limb. The relator's conduct would have been culpable in any one; it was doubly culpable in view of his position as a member of the police force. It is surely not too much to ask of the guardians of the lives and safety of the citizens of New York that they shall show a discretion and a caution that would have made this disaster impossible. We are not to overlook, moreover, the place in which it happened. There must be some limit to the horseplay allowed to officers within the walls of the station house. It does not seem unreasonable to hold that the limit has been passed when the horseplay involves the discharge of firearms with fatal consequences. At all events, it is not for the court, reversing the judgment of the commissioner, to pronounce such conduct consistent with order and discipline. The conduct itself was admitted. In determining that it was of such a nature as to require the punishment of the relator, to the end that the morale of the department might be preserved, the commissioner exercised a discretion not subject to judicial review.

It is true that under section 2140 of the Code of Civil Procedure the Appellate Division has the power in cer-

tiorari proceedings to determine "whether there was any competent proof of all the facts, necessary to be proved, in order to authorize the making of the determination," and also, "if there was such proof, whether there was, upon all the evidence, such a preponderance of proof, against the existence of any of those facts, that the verdict of a jury, affirming the existence thereof, rendered in an action in the Supreme Court, triable by a jury, would be set aside by the court, as against the weight of evidence." Broad as are the powers thus conferred, they are not so broad as to sustain the court's ruling in this case. There was here neither conflict of proof as to the existence of any facts, nor conflict as to the inferences to be drawn from them. Accepting the relator's own statement, and the most favorable deductions to be drawn from it, a case was none the less exhibited where the commissioner had the right to say that the discipline of the department demanded his dismissal. In this respect, the case is similar to that of *People ex rel. Masterson* v. *French* (110 N. Y. 494, 499). There the relator was intoxicated. He admitted his intoxication, but pleaded palliating circumstances. The General Term of the Supreme Court ordered his reinstatement. In reversing that decision, this court held that the case stood as if the relator "had pleaded guilty to the charge, and alleged the extenuating circumstances in mitigation of the punishment," and that "when a dereliction of duty on the part of an officer has been proved, the sufficiency of an excuse therefor, presents no question of law or fact for the courts, but is addressed solely to the judgment and discretion of those who are primarily charged with the duty of maintaining the discipline and efficiency of the force."

We conclude, therefore, that there was nothing in this record to call for the exercise by the Appellate Division of its discretionary powers; that the relator on the uncontradicted evidence was guilty of the acts stated in the

specifications; and that the extent of the penalty to follow is not subject to judicial review.

The order of the Appellate Division should be reversed, and the writ dismissed, with costs to the appellant in all courts.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK, CHASE and MILLER, JJ., concur; HOGAN, J., not voting.

Order reversed, etc.