Frank S. Samansky, J.
The court is petitioned separately by parents of children attending the public schools of New York City, that is, Public School No. 193 in Brooklyn and Public School No. 94 in Queens, to direct the members of the Board of Education, the principals and teachers of said schools, the president of the United Parents Association of New York City and the president of the Parents Association of Public School No. 193 to discontinue and refrain from participating in the issuance, dissemination, distribution or collection of information, statements or petitions to students while in class or on property under the control of the Board of Education which favors, advocates, urges or supports the initiation, modification, amendment, retention or repeal of legislation or the Constitution of the State of New York.
In February, 1967 petitioner Fare’s son, a pupil of Public School No. 193, and all other pupils in the school were each given by their teachers a one-page sheet of paper prepared by the Parents Association of Public School No. 193, in conjunction with the United Parents Association, which contained the following inscription:
*196 ‘ ‘ PARENTS ASSOCIATION OP PUBLIC SCHOOL 193 .
2515 Avenue L Brooklyn, New York
“ Dear Parent:
‘ ‘ A survey by the United Parents Association indicates that a majority of the delegates elected to the upcoming New York State Constitutional Convention favor a change in the section of the State constitution which prohibits the use of state funds for non-public schools. Such a change would remove constitutional guarantees of separation of Church and State in New York and would threaten the very survival of the public school system.
“ UPA is spearheading a campaign to prevent this from happening. Our participation is vital. Please sign and return the following with your child.
ELEANOR WALLACE President
“ To the Delegates of the New York State Constitutional Convention — 1967
‘ ‘ I urge the delegates to the Constitutional Convention to retain intact Article XI, Section 3, of the New York State Constitution which prohibits the use of any public monies either ‘ directly or indirectly ’ for ‘ any school or institution of learning wholly or in part under the control or direction of any religious denomination. ’
“ This portion of the State Constitution is one of the main principles upholding the doctrine of separation of church and state and safeguards the very existence of our public school system.”
Signed ..........................................
Address ........................................
Sponsored by Parents Association of P. S. 193 of Brooklyn, New York.
Pare’s son was instructed by his teacher to deliver the paper to his parents for signing and if his parents signed it he was to return it to his teacher who would collect it during the regular class hours.
Petitioner Brennan’s two children attend Public School No. 94. In March, 1967 the children and all other pupils in .this school were given by their teachers a printed circular prepared by the Parents Association of.Public School No. 94 which contained the following legend:
*197 ‘1 THE TIME TO ACT IS NOW!!!!
* ‘ Described below are three Bills which are now being proposed in the State Legislature. Tour PTA feels that they are of vital importance and deserve priority action. We therefore urge that all our membership give their wholehearted support and immediate action by writing to their legislative in Albany.
1 ‘ WE SUPPORT: THE EDUCATIONAL CONFERENCE BOARD BILL
S 951 (Senator Clinton Dominick)
AI 2039 (Assemblyman Joseph Kottler)
“ This bill would raise the present ceiling ($660) on operating expenses 10% to $726, increase the minimum apportionment (flat grant) to $262 per pupil and the minimum overall aid to $290.
1 ‘ The passage of this bill is of vital importance to the districts, and there are more than half of all the school districts of the state in this plight that are spending over the present ceiling. These districts have two alternatives, to raise .the necessary increased money called for in their budgets. The first is by raising local real estate taxes, thus paying not only their share of the support but the State’s share as well. The other alternative is to cut back on necessary programs and lower school quality.
“ WE SUPPORT AI 529 (assemblyman Blumenthal)
“ This bill will repeal the Textbook Law that was passed by the 1966 State Legislature allowing school districts $15 per pupil for the purchase of textbooks in grades 7-12, for students in public and parochial schools.
“ We fully support this bill. The policy of the National Congress of Parents and Teachers, the New York State Congress of Parents and Teachers, and the New York City Congress of Parents and Teachers states that public funds are to be used only for public schools.
“we support: S 2682 (Senator Bronston)
AI 4017 (Passannante-Yoswein)
“As of this year a State lottery will provide a new scarce of revenue toward education.
“Since Governor Rockefeller’s recent budget contained no provision for a State aid increase in education, the PTA insists that lottery revenues be allocated to education over and above monies presently mandated for education.
“ When writing your legislative in Albany be sure to refer to the number of the bill and the name of the Senator or Assem *198 blyman by whom the bill is being- sponsored. Letters should be addressed as follows:—
Senator (or Assemblyman)
State Capitol Albany, N. Y. 12204 ”
In both schools the distribution was made to all students irrespective of whether or not the parents were members of the Parents Association.
Petitioners contend that their children have been made to carry forward partisan political petitions and information which violate their political beliefs and religious convictions. They assert that the introduction of partisan political information into their children’s hands, and ultimately into their minds, by a public official violates the civil liberties guaranteed to them by the First Amendment to the United States Constitution and made applicable to them as citizens of the State of New York. They further claim that the Board of Education by requiring its teachers to participate in a politically partisan lobbying campaign, has illegally used and is continuing to illegally use a State agency’s power, prestige and financial support to gain a partisan sectarian advantage.
The members of the Board of Education and the principals and teachers of the schools involved assert: The public school system of New York recognizes that Parents Associations provide opportunities for parents and the school to get together for the consideration of common educational objectives and for the better solution of common problems. These associations serve to instill in the parents a vital appreciation of the importance of children’s education and help to bring about a better understanding of the school, of what it aims to do, how it tries to accomplish its objective and what it needs in order to do its work better. In this spirit the Board of Education co-operates with Parents Associations in distributing communications with parents of students whether or not the ideas fostered by the associations coincide with those of the Board of Education.
It is further claimed that the circulars in question were wholly prepared by the associations. The opinions expressed therein were not passed upon or indorsed by the teachers distributing them or by the schools involved. Neither did they impose any duty on the pupils or their parents to read or to adopt the views expressed nor did they express or attempt to coerce any political opinion. In March, 1967 the Board of Education adopted a policy that although Parents Associations’ bulletins and leaflets could be distributed through the children, *199 the return and collection through school class facilities of the materials setting forth the views of parents would no longer be permitted.
It is additionally claimed that no rights of the petitioners are being violated and since the distribution of the Parents Associations’ leaflets and bulletins involve an administrative policy of the school system, petitioners’ proper recourse is not to this court but to the State Commissioner of Education.
The remaining respondents assert that this court has no jurisdiction to examine and decide upon appeal, to wit, the grievance of any person by any act of school authorities concerning matters pertaining to the schools. It further urges that sound educational policy requires close co-operation between school authorities and Parents Associations including the distribution of the associations’ notices, circulars or bulletins without censorship by the .school authorities.
Section 310 of the Education Law does not bar this procedure since the application herein involves questions concerning the performance of a constitutional duty (Matter of Scales v. Board of Educ., 41 Misc 2d 391; Matter of Engel v. Vitale, 18 Misc 2d 659, affd. 11 A D 2d 340, affd. 10 N Y 2d 174, revd. on other grounds 370 U. S. 421).
Basically it is the petitioners’ charge that the distribution of the circulars of the Parents Association through the schools places thereon, in the eyes of the pupils and parents, the stamp of approval of the Board of Education and should they fail to conform they would be treated as outcasts and despised by society. This pressure or coercion, it is urged, infringes upon their freedom of speech and political thought, right of privacy and freedom of religious belief.
Freedom of thought and expression of the speaker or writer is the concern of the First Amendment of the Constitution of the United States and not the conditions under which the listener or reader receives the message even if the auditor fails to volunteer or consent to listen. And if the auditor is influenced against his will by the arguments presented or chooses to refrain from voicing opposition so as not to have the proponents look at him with disfavor, these are legitimate consequences of the freedom of speech and thought endowed to the speaker and among its purposes. Thus in Thornhill v. Alabama (310 U. S. 88, 104) the court said: ‘ ‘ Every expression of opinion on matters that are important has the potentiality of inducing action in the interests of one rather than another group in society. But the group in power at any moment may not impose penal sanctions on peaceful and truthful discussion of matters *200 of public interest merely on a showing that others may thereby be persuaded to take action inconsistent with its interests.”
If the view of the petitioners would be adopted it would seem that all governmental action would be subject to constitutional attack by any dissident upon the claims that the government’s “ stamp of approval ” dissuades him from criticizing its actions. This would result in no gain in freedom of speech but in loss of freedom in government. Balancing- public welfare against the personal rights of those ‘‘subtly coerced” the rights of the latter must be subordinated to those of the former. The right of free speech is not -absolute (Parker v. Board of Educ., 237 F. Supp. 222, affd. 348 F. 2d 464, cert. den. 382 U. S. 1030, rehearing den. 383 U. S. 939).
The right of privacy is one of the penumbras of the specific guarantees in the Bill of Rights (Griswold v. Connecticut, 381 U. S. 479). The Supreme Court of the United States in including such right as- a protected one under the Constitution did not define the term although it is one which is sufficiently flexible to embrace within its fold a multitude of meanings. It is however my view that the court did not intend to protect all privacies that can be encompassed within the broad abstract term but only those where an intrusion outrages or causes mental suffering, shame or humiliation to a person of ordinary sensibilities. The privacy claimed to have been invaded herein is the right to be free from partisan political propaganda. Such privacy is not one which falls within the limitations set forth above and is accordingly not a protected right under the Constitution.
Petitioners also charge sectarianism. Simply stated, the question is — namely, whether the distribution of the circulars by the Parents Association through the schools which advocate the retention in the Constitution of the State of New York of a provision which prohibits the use of State funds for any school or institution of learning wholly or in part under the control or direction of any religious denomination, displays the favoritism that is repugnant to our Constitution — the preference of 'one religion over another.
The circulars in question and those others which are annexed as exhibits to petitioners’ papers and which were circulated in other schools advocate a complete separation of church and State and the retention of section 3 of article XI of the New York State Constitution. The said article and section have been held not to discriminate against religion (People ex rel. Lewis v. Graves, 245 N. Y. 195; Judd v. Board of Educ., 278 N. Y. 200). ‘ ‘ Denominational religion is merely put in its proper place outside of public aid or support.” (People ex rel. Lewis v. Graves, *201 supra, p. 198.) To recommend the retention of a provision of the Constitution which does not discriminate against religion and counsel the complete separation of church and State is no more discriminatory than the Constitution itself.
Aside from the constitutional issues raised by the petitioners, they also assert that each of the employees of the Board of Education who participated in the distribution of the Parent Association circulars violated section 107 of the Civil Service •Law and more particularly that portion of subdivision 1 thereof which reads: “ No person in [civil] service shall use his official authority or influence to coerce the political action of any person or body ”. Considering the language of the statute in its most natural and obvious sense the word “ coerce ” means to force through punishment or a threat thereof. Obviously such coercion did not exist. To include in its meaning the indirect pressures of influence on the mind or “ brain-washing,” as the petitioners term it, would create an absurdity.
Lastly, petitioners assert that the Board of Education and the respondents violated their own educational guidelines which provide that partisan political forces should not be allowed to enter the Parent Association-school relationship, made their teachers violate established norms of ethical and professional behavior of teachers and made their teachers abuse and take unfair advantage of the teacher-pupil relationship. These grievances are within an area of which the Commissioner of Education has exclusive jurisdiction under section 310 of the Education Law whereunder an aggrieved may receive orderly, technically and professionally competent review. The petitions are accordingly dismissed.