OPINION OF THE COURT
Eli Wager, J.
Where an article 78 proceeding is commenced by a tenured teacher seeking review of a determination made by a hearing panel convened pursuant to section 3020-a of the Education Law, is the court authorized to stay or dismiss the proceeding for the purpose of permitting the *822 Commissioner of Education to render a decision in an appeal subsequently commenced by the board of education? This is the issue raised by the respondent board of education and superintendent of schools (the Board) in their motion to stay or dismiss this article 78 proceeding commenced by Anne Tombler, a tenured teacher in the Brookhaven-Comsewogue Union Free School District.
THE FACTS
By decision dated March 26, 1981 a statutory three-member panel found petitioner guilty on charges of neglect of duty, inefficiency, incompetency and conduct unbecoming a teacher and “recommended” a one-year suspension without pay commencing on April 15,1981. It appears that a copy of the panel’s findings and determination was received in the office of the New York State United Teachers, which represents petitioner, on April 3, 1981, although that organization’s counsel asserts in her memorandum that she received the copies on April 6, 1981. Counsel for the Board asserts that he too received copies on April 6, 1981. On April 7, 1981 petitioner commenced this article 78 proceeding, alleging among other things that there is not substantial evidence in the record of the hearing to support the panel’s findings and that the penalty is excessive. The board of education met in a special workshop session on the evening of April 6, 1981 and authorized its counsel to prepare an appeal from the panel’s determination to the Commissioner of Education alleging that the record does not support a penalty limited to a one-year suspension and urging the commissioner to direct that the petitioner be dismissed. The following day, counsel prepared the petition and on April 8, 1981 he secured the requisite verification and served the petitioner. By letter dated April 10, 1981 petitioner’s counsel advised the commissioner of the pendency of this article 78 proceeding and requested that he decline jurisdiction of the Board’s appeal. The commissioner responded that objections could only be raised in an answer to the petition and accordingly petitioner served an answer “for the limited purpose of challenging the jurisdiction of the Commissioner of Education to hear and determine this appeal.”
*823 By order to show cause dated May 8, 1981 the Board brought on the instant motion to dismiss this proceeding upon the ground that (1) the court lacks jurisdiction; (2) there is a proceeding pending before the Commissioner of Education between the same parties involving issues dis-positive of the subject proceeding; and (3) the panel’s determination can be adequately reviewed by the Commissioner of Education. In the alternative, the Board seeks a stay of this proceeding until such time as the Commissioner of Education shall have acted on the Board’s appeal.
THE ISSUES
The dispute is generated by the invitation to “forum shopping” contained in subdivision 5 of section 3020-a of the Education Law, as amended (L 1977, ch 82), which provides as follows: “5. Appeal. Either the employee or the employing board may review the findings of the hearing panel either by appeal to the commissioner of education as provided for by article seven of this chapter, or by a special proceeding under article seventy-eight of the civil practice law and rules. The hearing panel’s determination shall be deemed to be final for the purpose of such proceeding.”
The Board’s thesis is that teachers will generally seek court review of panel determinations on punishment because the court’s power of review of the measure of punishment imposed is limited to the question of whether the sanction is so disproportionate to the offense as to “shock the conscience of the court”, whereas the commissioner is statutorily empowered to substitute his judgment for that of the hearing panel and to fix an appropriate penalty if he concludes that employee conduct is detrimental and injurious to the school system. “It is unlikely,” the Board concludes, “that a Board of Education could ever outrace the individual teacher since the speed by which a municipal body can act can never match the speed of a single individual” and thus, unless the courts are willing to stay or dismiss article 78 proceedings commenced by teachers, the Commissioner of Education will be precluded “from hereafter sitting in review of any 3020-a appeals,” an opportunity the commissioner, “having special expertise and experience in matters of teacher discipline, should have”.
*824 The petitioner counters with the assertion that she commenced this action first, and that the court has no discretion under the statute to decline jurisdiction and that even if the court had such power it would be an abuse of discretion to exercise it here since the court is as competent as the commissioner to review the measure of punishment. Like the Board, the petitioner also asserts that the standard of review in the forum chosen by her adversary is somehow inimical to her interests. Even though the commissioner is empowered to substitute his judgment on findings of fact and the penalty imposed for that of the panel (and, she asserts, has shown a “propensity” to do so), the court will set his determination aside only if it is purely arbitrary or illegal.
THE STATUTORY RIGHT TO SELECT THE FORUM
Prior to 1977, subdivision 4 of section 3020-a of the Education Law did not mandate that the recommendations of the hearing panel be accepted by the board of education; instead, the Board was empowered to fix the penalty or punishment by majority vote within 30 days of receipt of the hearing report. In 1977 the section was amended to provide that the Board “shall implement the [hearing panel’s] recommendations” (L 1977, ch 82). Subdivision 5, which had authorized appeals only by the aggrieved employee, was also amended to give the Board the same right. According to the legislative memorandum of Senator Edison, the bill’s sponsor, the purpose of the amendments “is to provide uniform, impartial hearing procedures for the handling of disciplinary matters for teachers who have acquired tenure” (see Bill Jacket, L 1977, ch 82). The senator noted that because the “current weakness of the hearing panel function allows many boards to make a charade out of the entire procedure”, the amendment makes the hearing panel’s recommendations binding. “To ensure due process to both parties,” the memorandum concludes, “both the board and the employee are provided the right to appeal the hearing panel’s determination, either to the Commissioner of Education or through an Article 78 proceeding.” Perusal of the legislative history of the amendment discloses no recognition of the fact that providing both parties with a choice of forum could engen *825 der the unseemly race that has occurred here — although the reference to due process in the sponsor’s memorandum suggests that the Legislature was aware of the fact that the provision in the amended statute depriving the employer of the power to determine the measure of punishment was an unusual procedure (the statute provides that the Board may fix the penalty or punishment only when the employee fails to timely request a hearing [Education Law, § 3020-a, subd 2]). The reference to due process and the provision granting the Board as well as the teacher the right of appeal (presumably not only from the findings of fact with respect to guilt but also from the measure of punishment imposed [see Matter of Mockler v Ambach, 100 Misc 2d 717, affd 79 AD2d 745]) compels the conclusion that the legislative intent was at least to insure that both the Board and the teacher have access to a forum empowered to fashion the particular remedy each might seek on such an appeal. Thus, the threshold issue is whether one or both of the appeals forums are empowered to grant the relief sought by the teacher (a ruling that the finding of guilt is not supported by substantial evidence and reduction in the measure of punishment) and that sought by the Board (dismissal instead of suspension).
THE APPELLATE POWER OF THE FORUMS.
Pursuant to CPLR 7803 (subd 3), review of the question of whether there has been an “abuse of discretion as to the measure or mode of penalty or discipline imposed” involves a two-tiered test. The court must first determine whether there is substantial evidence to support a finding of guilt and, if so, the test is whether the punishment imposed is “so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one’s sense of fairness” (Matter of Pell v Board of Educ., 34 NY2d 222, 233). The latter determination is made as a matter of law on the basis of arbitrariness rather than substantial evidence (Matter of Pauling v Smith, 46 AD2d 759).
 CPLR 7803 (subd 3) was first enacted in 1955 (as Civ Prac Act, § 1296, subd 5-a [see L 1955, ch 661]) in response to prior judicial rulings to the effect that the courts lacked jurisdiction to review the measure of punish *826 ment imposed as an incident to disciplinary action ordered by an administrative board (see Matter of Barsky v Board of Regents, 305 NY 89, affd 347 US 442; Matter of Sagos v O'Connell, 301 NY 212; People ex rel. Morrissey v Waldo, 212 NY 174; see, generally, NY Legis Ann, 1955, p 32 et seq.). According to the Governor’s memorandum, the purpose of the bill was to provide a remedy for “one who suffers as a result of an excessive penalty” (NY Legis Ann, 1955, p 488). In 1960 the Court of Appeals, noting that the material in the 1955 Legislative Annual “suggests that subdivision 5-a was intended to give the court * * * complete power over the whole subject matter”, held that a reviewing court had the power to order a lesser discipline upon application of the arbitrary and capricious test, i.e., whether “‘the measure of punishment or discipline imposed is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one’s sense of fairness’ ” (Matter of Mitthauer v Patterson, 8 NY2d 37, 42). Thus, the courts clearly have the power to reduce the measure of punishment imposed by an administrative agency where the penalty imposed is found to be too harsh (see, e.g., Matter of Koupash v Board of Educ., 72 AD2d 885; Matter of Seales v Malcolm, 61 AD2d 920). Since boards of education prior to 1977 were in no position to impeach the measure of punishment they themselves imposed, there is a dearth of recorded cases wherein the penalty imposed was challenged as being too lenient. However, in Board of Educ. v Gootnick (65 AD2d 940, mod 49 NY2d 683), the issue was raised in a proceeding which focused primarily on the constitutionality of the 1977 amendment of section 3020-a. In its petition, the board of education attacked the delegation of power to the panel to determine penalties as well as guilt and the composition of the panels upon constitutional grounds. The board of education also sought to reverse the panel’s finding of nonguilt on two of the charges upon the ground that the determinations were not supported by substantial evidence and attacked the penalty imposed upon the ground that “its leniency constitutes an abuse of discretion”. The Appellate Division, Fourth Department, dismissed the petition upon the ground that the statute was constitutional, that the *827 panel’s findings were supported by substantial evidence and that the penalty assessed was not so “shocking to one’s sense of fairness” that it must be vacated, citing Matter of Pell v Board of Educ. (supra). On appeal, the Court of Appeals, focusing solely on the constitutional issues, converted the proceeding to a declaratory judgment action and remitted for the entry of judgment declaring section 3020-a as amended to be constitutional. It appears that the Appellate Division’s rulings on the issues of guilt and the measure of punishment were not appealed from. If in fact the courts have power to review a punishment or penalty as too lenient, it follows that they must also have the power to substitute a harsher penalty to avoid the circumlocation of remitting the matter to the panel for such action (see Matter of Mitthauer v Patterson, supra).
With respect to the appellate power of the commissioner, the reference in subdivision 5 of section 3020-a to article 7 of the Education Law invokes section 310 of the Education Law pursuant to which the commissioner is “authorized and required to examine and decide” appeals brought by any party conceiving himself aggrieved.
Section 310 has been construed as conferring upon the commissioner “a wide sweep of power” (Board of Educ. v Allen, 6 NY2d 127), including, with respect to disciplinary matters, the power to substitute his judgment for that of a board of education (see Matter of Vetere v Allen, 15 NY2d 259; Board of Educ. v Allen, supra) or for that of the hearing panel (Matter of Mockler v Ambach, 100 Misc 2d 717, affd 79 AD2d 745, supra). Specifically, he may fix a greater penalty than that imposed by the panel upon a finding that “employee conduct is detrimental and injurious to the school system” (Matter of Mockler v Ambach, 79 AD2d 745, 746, supra). The commissioner’s determinations are reviewable by the courts pursuant to the usual standard of review, i.e., the arbitrary and capricious test (Matter of Ward v Nyquist, 43 NY2d 57) which is to say whether the punishment or penalty imposed by the commissioner or affirmed by him “is ‘so disproportionate to the offense, in light of all the circumstances, as to be shocking to one’s sense of fairness’ ” (Matter of Mockler v Allen, supra, p 746).
*828 In summary, it appears that both the commissioner on a section 310 appeal and the courts in article 78 proceedings may not only entertain appeals from hearing panel “recommendations” brought by boards of education as well as teachers, but both may order a penalty or punishment different from that of the panel when the measure of punishment is found to be too lenient as well as too harsh. The commissioner may substitute his judgment for that of the panel upon a finding that “employee conduct is detrimental and injurious to the school system” (Matter of Mockler v Ambach, supra, p 746) and his determination will be subjected to the Pell test on appeal. The courts may order a more severe penalty or punishment upon a finding that there has been an “abuse of discretion as to the measure or mode of penalty or discipline imposed” (CPLR 7803, subd 3), i.e., the Pell test. Such an analysis is consonant with the evident legislative purpose of subdivision 5 of section 3020-a of the Education Law to provide both parties with a choice of forum empowered to grant the relief each would be expected to seek. A statute should be construed so as to effectuate rather than frustrate legislative intent (McKinney’s Cons Laws of NY, Book 1, Statutes, §96).
Ultimately, the only difference in the appellate review available in the two forums may be simply that the courts are reluctant to exercise the full sweep of their appellate powers in disciplinary matters (see, e.g., Matter of Chilson v Board of Educ., 41 AD2d 739), whereas the commissioner is less hesitant, a difference which may, however, be significant since the legislative intent in amending subdivision 5 of section 3020-a was to insure due process to boards of education and since due process demands that litigants be afforded redress by some effective procedure (Matter of Slewett & Farber v Board of Assessors of County of Nassau, 80 AD2d 187). However, it is too soon to predict whether this asserted judicial reluctance will abate in the face of the provisions in section 3020-a which deprive boards of education of discretion in such matters ab initio. Judicial hesitancy has traditionally been justified on the ground that the employing agency’s exercise of discretion should not be interfered with (People ex rel. Morrissey v Waldo, *829 212 NY 174, supra) and that interference by the courts would violate settled principles governing the relationship between the courts and administrative agencies (Matter of Stolz v Board of Regents, 4 AD2d 361).
Section 3020-a as amended has not only rendered such considerations moot but the legislative intent underlying subdivision 5 — which makes no distinctions between the appellate forums — appears to be that each is empowered to grant the relief sought by either party in equal measure. It thus appears that it would be premature at this juncture to dismiss or stay the article 78 proceeding upon the ground that the court may hesitate to exercise its appellate power since such a procedure would perforce be based on mere speculation — unless there are other less speculative grounds. The Board urges one such ground when it requests a stay on the ground that the commissioner is the more appropriate forum because of his greater expertise.
THE EFFECT OF THE COMMISSIONER’S EXPERTISE
The Board’s request for a stay upon the ground that the commissioner is better qualified to rule on disciplinary matters is in effect an invocation of the doctrine of primary jurisdiction. The doctrine represents an “attempt to resolve both the procedural and substantive conflicts inevitably created when there is carved out for an agency an area of original jurisdiction which impinges on the congeries of original jurisdiction of the courts” (Jaffe, Judicial Control of Administrative Action [1965], p 121). The doctrine was first promulgated in a rate-making case upon the rationale that an administrative ruling was required in the interest of uniformity (Texas & Pacific Ry. v Abilene Cotton Oil Co., 204 US 426) and has since been expanded to include those situations requiring the special expertise of a specialized agency (see, e.g., Holt Mar. Term. v United States Lines, 472 F Supp 487; Itzcovitz v Selective Serv. Local Bd., No. 6, N. Y., 301 F Supp 168, app dsmd 422 F2d 828).
To the extent that the doctrine has been applied in New York to matters involving the schools, it has been said that the courts will assume jurisdiction in the first instance where personal, constitutionally guaranteed rights are involved but will defer to the commissioner where “orderly, *830 technically and professionally competent review” by him adequately protects those aggrieved (Matter of Levert v Gavin, 39 Misc 2d 569, 571). Thus the courts have refused to assume jurisdiction in matters over which sole jurisdiction has been delegated to the commissioner by statute (e.g., Education Law, § 2037 [see Matter of Levert v Gavin, supra]; Education Law, § 2024 [see Matter of Leeds v Board of Educ., 19 Misc 2d 860, affd 9 AD2d 905]), or where technical details requiring professional skills are involved (Union Free School Dist. No. 7, Town of Greenburgh v Nowicki, 57 Misc 2d 66), or in matters of policy statutorily vested in school administrative agencies (James v Board of Educ., 42 NY2d 357). But the courts have not deferred to the commissioner in matters involving a violation of law (Matter of Jacobsen v Board of Educ., 177 Misc 809) or of a constitutional duty (Matter of Pare v Donovan, 54 Misc 2d 194) or construction of a statute where no issue of fact is involved (Board of Educ. v Rickard, 32 AD2d 135; Matter of Lowry v Brockport Cent. School Dist., 88 Misc 2d 551; Matter of Harran Transp. Co. v Board of Educ., 71 Misc 2d 139; Matter of Leone v Hunter, 21 Misc 2d 750). The courts are competent to offer definitive resolutions of discrete issues of law raised, for example, where educational authorities have acted in a judicial or quasi-judicial capacity even though these matters may effect educational policy (see James v Board of Educ., supra, p 365).
Since appellate review of the measure of punishment imposed upon tenured teachers has been delegated impartially to both the court and the commissioner (Education Law, § 3020-a, subd 5), since the courts are empowered to make their determinations on such a review as a matter of law on the basis of arbitrariness rather than upon the substantiality of the evidence (Matter of Pauling v Smith, 46 AD2d 759, supra), and since any necessity for exercise of the expertise of educational authorities in disciplinary matters has been legislatively refuted by the provision in section 3020-a depriving boards of education of the power to determine the measure of punishment in the first instance, the conclusion is impelled that the doctrine of primary jurisdiction is inapplicable to matters involving discipline of tenured teachers.
*831 CONCLUSION
The Board’s motion must be denied in all respects. There is no merit to the contention that the court lacks jurisdiction of the article 78 proceeding; dismissal of the proceeding would not only violate the legislative scheme but is unavailable under CPLR 3211 (subd [a], par 4) since the pending “action” is not an action but an appeal to an administrative agency and in any event was not the first commenced (see, e.g., Campagna v Dune Alpin Farm Assoc., 81 AD2d 633); and a stay pursuant to CPLR 2201 is not warranted since it has not been shown that the entire matter cannot be adequately reviewed in this forum or that exercise of the expertise of the other forum is required (see, e.g., Research Corp. v Singer-General Precision, 36 AD2d 987).
The Board is directed to serve its answer within five days after service of the order to be entered hereon.