CYNTHIA TUCKER *v.* BOARD OF EDUCATION OF
THE TOWN OF NORFOLK
(10767)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and GRILLO, Js.

Argued May 10—decision released July 26, 1983

*Martin A. Gould,* for the appellant (plaintiff).

*Thomas N. Sullivan,* for the appellee (defendant).

ARTHUR H. HEALEY, J. This appeal involves the same parties that were before this court in *Tucker* v. *Board of Education,* 177 Conn. 572, 418 A.2d 933 (1979), (*Tucker I*), in which the plaintiff had appealed from the termination by the defendant board of education of her contract of employment to teach.[1] In that case, we agreed with the board's contention that insubordination, with which the plaintiff had been charged,[2] "in

---

[1] Our decision in *Tucker* v. *Board of Education,* 177 Conn. 572, 418 A.2d 933 (1979), was released on May 29, 1979.

[2] In *Tucker I,* we specifically said: "Although we do not go so far as to hold that a teacher's contract may be terminated for *any* reason under the 'other due and sufficient cause' clause of General Statutes § 10-151 (b) (6), we hold that a teacher may be dismissed for conduct constituting insubordination under the 'other due and sufficient cause' provision of that statute." (Emphasis in original.) *Tucker* v. *Board of Education,* 177 Conn. 572, 578, 418 A.2d 933 (1979).

and of itself constitutes 'other due and sufficient cause' for the termination of the plaintiff's contract and is a valid statutory basis for dismissal under the provisions of [General Statutes] § 10-151 (b) (6)." *Tucker* v. *Board of Education,* supra, 577. We also pointed out that "we [were] further satisfied that the evidence was clearly sufficient to sustain the opinion of the impartial hearing panel and the [defendant] board that the plaintiff was guilty of insubordination." *Tucker* v. *Board of Education,* supra, 580. This court was of the opinion, however, that "dismissal constituted exceedingly excessive punishment for the plaintiff's misconduct, and an abuse of discretion, especially in the light of the plaintiff's excellent and unblemished school record as a capable, dedicated teacher." *Tucker* v. *Board of Education,* supra, 581–82. In finding that the defendant board had followed the required statutory procedures concerning the termination of the plaintiff's contract, we concluded that the board had jurisdiction "to take some action against the plaintiff, short of the termination of her contract." *Tucker* v. *Board of Education,* supra, 582. In reversing the board's action of terminating the plaintiff's contract, we returned the case to the board "for the imposition of a penalty consistent with the views expressed in this opinion."[3] *Tucker* v. *Board of Education,* supra.

On June 4, 1979, the board sent a letter to the plaintiff offering her reinstatement to a full-time teaching position as well as informing her of its decision to consider her absence from employment from the beginning of the 1976–77 school year to August 29, 1979, as a period of suspension without pay or benefits.[4]

---

[3] In *Tucker I* our rescript stated: "There is error, the judgment is set aside and the case is remanded with direction to return the case to the board for further proceedings consistent with the views expressed in this opinion." *Tucker* v. *Board of Education,* 177 Conn. 572, 582, 418 A.2d 933 (1979).

[4] On June 4, 1979, the board adopted a resolution set out in a letter from

Thereafter, on November 14, 1980, the plaintiff brought this action against the board in which she sought: (1) a declaratory judgment that the board acted in an arbitrary and illegal manner in suspending her; (2) reimbursement of all salaries and fringe benefits lost as a result of the board's action; and (3) money damages. The trial court, in its memorandum, noted that in *Tucker I* we had "concluded that the board had jurisdiction to take some action against the plaintiff short of the termination of her contract." It, therefore, concluded that the board's action suspending her without pay for the period referred to was not illegal and that it did not act "in an arbitrary and illegal manner." Additionally, it determined that it should not substitute its judgment for that of the defendant board.

On appeal, the plaintiff makes two claims. Her first claim is that the defendant board erred because suspending her without pay for the period beginning with the 1976–77 school year to August 29, 1979, was excessive, arbitrary and illegal. Second, she claims that

the board to the plaintiff dated June 5, 1979, which stated the following:
"Dear Mrs. Tucker:
"The Norfolk Board of Education at a special meeting held on Monday, June 4, 1979 unanimously voted the following motion:
" 'In view of the decision of the Connecticut Supreme Court in the case of Tucker v. the Board of Education of the Town of Norfolk holding that even though Cynthia Tucker was insubordinate in ignoring the Board's denial of her request for leave of absence her contract may not be lawfully terminated and that the Board should impose a penalty consistent with its holding, I hereby move that the period of Mrs. Tucker's absence from employment beginning with the 1976–77 school year be considered a suspension from duty without pay and benefits and that this period of suspension without pay and benefits be extended until August 29, 1979.'
"Please consider this letter a formal offer of reinstatement to a full time teaching position at Botelle School to commence on August 29, 1979.
"I would greatly appreciate it if you would communicate your letter of acceptance or rejection of this offer to me no later than June 18, 1979. I am enclosing a stamped, addressed envelope for your convenience.
"I shall look forward to hearing from you."

the trial court erred in concluding that it should not substitute its judgment for that of the board as to the penalty the board did in fact impose upon the plaintiff after we returned the matter to the board.

In responding to these issues we point out that the board, in imposing the suspension, did impose a penalty "short of termination of her contract" and had jurisdiction to do so. *Tucker* v. *Board of Education,* supra, 582. While the plaintiff maintains that this is an excessive penalty, it is one which the board could legally impose under *Tucker I.* In carrying out the mandate of this court, the board was limited to the specific direction of the mandate as interpreted in the light of the opinion. *Gary Excavating Co.* v. *North Haven,* 163 Conn. 428, 430, 311 A.2d 90 (1972); *Mazzotta* v. *Bornstein,* 105 Conn. 242, 243, 135 A. 38 (1926). On remand, while the board could not alter our decision, it could take action which was not inconsistent with our decision. See *King* v. *Alaska State Housing Authority,* 571 P.2d 1010, 1012 (Alaska 1977); *Mazzotta* v. *Bornstein,* supra, 244. The suspension imposed was, as a matter of law, within our remand to the board.

We have, nevertheless, decided, in the interest of justice, to examine the authority to which the plaintiff refers us on her claim of excessive penalty. In that regard, the plaintiff argues that a review of the cases cited in her brief makes it apparent that the board's three year suspension is excessive. We do not agree. A review of these cases, which are from New York and West Virginia, does not at all support her position. The New York cases, in which the court reviewed the procedure by which the penalty was imposed upon the employee, are premised upon the court's power by virtue of specific statutory authority to do so. See 7B N.Y. Civ. Prac. Law § 7803 (3) (McKinney 1981). This

statutory power in New York was created in 1955[5] "to overrule [court] holdings . . . that no judicial review was available as to the measure of punishment imposed by administrative bodies acting within their powers." *Mitthauer* v. *Patterson,* 8 N.Y.2d 37, 41, 167 N.E.2d 731 (1960); *Matter of Pell* v. *Board of Education,* 34 N.Y.2d 222, 235, 313 N.E.2d 321 (1974) ("There is no doubt that the reason for the enactment of the statute [CPLR 7803] was to make it possible, where warranted, to ameliorate harsh impositions of sanctions by administrative agencies."); see *Barsky* v. *Board of Regents,* 305 N.Y. 89, 111 N.E.2d 222 (1953), aff'd, 347 U.S. 442, 74 S. Ct. 650, 98 L. Ed. 829 (1954). Connecticut has no such statute. Accordingly, we have no such statutory authority as the New York courts in such matters.

The only other case cited in the plaintiff's brief is the West Virginia case of *Fox* v. *Board of Education,* 236 S.E.2d 243 (W. Va. 1977). It does not avail the plaintiff. In *Fox,* the question before the West Virginia court was whether the plaintiff's misconduct constituted wilful neglect of duty so as to warrant his dismissal. The court held that it did not and found that dismissal was "so unduly severe as to be arbitrary and unreasonable." *Fox* v. *Board of Education,* supra, 246. In doing so, it pointed to West Virginia precedent that " '[t]he authority of a county board of education to dismiss a teacher under *W. Va. Code* 1931, 18A-2-8 . . . must be based upon the *just causes* listed therein [wilful neglect of duty was one listed] and must be exercised reasonably, not arbitrarily or capriciously.' "

---

[5] "Subdivision 3 of CPLR 7803 was first enacted in 1955 (as subdivision 5-a of section 1296 of the Civil Practice Act [see L. 1955, ch. 661]) in response to prior judicial rulings to the effect that the courts lacked jurisdiction to review the measure of punishment imposed as an incident to disciplinary action ordered by an administrative board." *Tombler* v. *Board of Education of the Brookhaven-Comsewoque Union Free School District,* 109 Misc. 2d 821, 825–26, 440 N.Y.S.2d 1012 (1981).

(Emphasis added.) *Fox* v. *Board of Education,* supra, 244–45. *Fox* is distinguishable from this case. Unlike *Fox,* in *Tucker I* we found evidence "clearly sufficient" to sustain the opinion of both the defendant board and the impartial hearing panel that the plaintiff was guilty of insubordination, and we decided there that under General Statutes § 10-151 (b) (6) insubordination constitutes "legal cause" for termination of a tenured teacher's contract of employment as a matter of law. *Tucker* v. *Board of Education,* supra, 579–80; cf. *Catino* v. *Board of Education,* 174 Conn. 414, 389 A.2d 754 (1978). In sum, the cases cited by the plaintiff do not support her claim that the action of the board in imposing the suspension was excessive, arbitrary and illegal.

In addition, we cannot accept the plaintiff's claim that the trial court erred in concluding that it should not substitute its judgment for that of the board in reviewing the penalty of suspension imposed. She argues that because the board failed to impose a reasonable penalty, the trial court was "entitled and obligated" to review the merits of the board's decision and to substitute its judgment for that of the board. We do not agree.

It is fundamental that a declaratory judgment cannot be used as a substitute for an appeal. See *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 105, 291 A.2d 721 (1971); 2 Anderson, Actions for Declaratory Judgments (2d Ed. 1951) § 678; Borchard, Declaratory Judgments (2d Ed. 1941) pp. 350–52; 22 Am. Jur. 2d, Declaratory Judgments § 17. No appeal, of course, could be taken from the board's action of June 4, 1979, because under General Statutes § 10-151 (f) an appeal may be taken only from a decision to terminate a teacher's contract of employment. See *Delagorges* v. *Board of Education,* 176 Conn. 630, 633–34, 410 A.2d 461 (1979). The plaintiff has not

realistically considered the narrowness of the review afforded by her action for a declaratory judgment. It is not appropriate for challenging the correctness of an agency's decision in a given case; *Aaron* v. *Conservation Commission,* 178 Conn. 173, 178, 422 A.2d 290 (1979); particularly where there is no right, as here, to a statutory appeal from the determination of a school board imposing a sanction short of termination. In the absence of constitutional claims, therefore, the only basis for her declaratory judgment action is the remand in *Tucker I.*

The charter of the trial court in its review of the board's action on our remand was a limited one in this case. That charter was to determine that the board did not "deviate from the mandate issued by [the] appellate court." *Briggs* v. *Pennsylvania R. Co.,* 334 U.S. 304, 306, 68 S. Ct. 1039, 92 L. Ed. 1403 (1948); *Gary Excavating Co.* v. *North Haven,* supra; *Mazzotta* v. *Bornstein,* supra. Its function was to determine whether the board's action was within the mandate of our remand and it correctly concluded that it was.[6]

There is no error.

In this opinion the other judges concurred.

---

[6] The constraints of judicial review on this appeal, including the lack of a statute similar to that in New York permitting courts to pass upon the severity of penalty in cases such as these, points up these strictures.