[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT
This litigation is understandably quite contentious. It has dragged through the courts for many years. There has been a trial, a verdict in that trial was rendered in the plaintiff's behalf, that verdict was overturned on appeal and the case was remanded for a new trial in the Spring of 1994. After the remand several procedural matters arose largely in the form of attempts to amend the complaint. A fifth amended complaint was filed in February of 1995. The litigation first began in August of 1988 over one year after the claim of the plaintiff was denied by Maria Calabro, the defendant, who at that time in July 1987 was acting as the Administratrix of her husband Joseph's estate.
The dispute here arises out of the claim by the plaintiff that in 1980 she entrusted her brother with $45,000. upon his CT Page 544 representation that he would double or triple her investment. The plaintiff planned to use this money for her retirement and her original investment, according to the plaintiff, represented the bulk of her life savings. A corporation was set up by the brother and the claim is that the plaintiff's money was made part of the assets of the corporation. The defendant, Maria Calabro, concedes that some $19,000. of the plaintiff's money was used to make a down payment on the so-called McDonald property. An approximately equal amount was put up by the brother and a mortgage of $165,000. was taken out on the property. That property is alleged to now be worth approximately $500,000. This property was purchased in the names of Joseph and Maria Calabro. When Joseph died, Maria inherited the property.
The defendant Maria Calabro disputes whether any money in addition to the $19,537. that was used to invest in the McDonald property was given to her husband by the plaintiff and vigorously disputes any claim that any such additional money was used to purchase property other than the McDonald property which Maria Calabro also inherited after her husband Joseph's death.
Although the matter was removed from the jury list after it was remanded for a new trial by the Appellate Court, permission was granted to the plaintiff to file a motion for summary judgment. Depending on which side makes the argument the permission was granted in either March or December of 1995. The matter did not come before this court until September 1996 — this in a case that had been remanded for a new trial in March of 1994. The defendant of course also filed a motion for summary judgment.
The court heard this matter in September, received a short continuance from counsel and planned to try to resolve the motions on their merits during the two week holiday break.
After reading all briefs and examining the Appellate Court decision on this matter in 33 Conn. App. 842, the Court has concluded it can only follow the mandate of that court which was about as succinct as a court can get "Reversed; new trial".
The court noted at pages 844-845 that the complaint was brought in five counts. It said the first and second counts were brought against Joseph Calabro for breach of fiduciary duty and negligent misrepresentation. The third count was brought against Maria Calabro as Administratrix and beneficiary of her husband's CT Page 545 estate and officer of CCW Corporation for conversion, the fourth count was brought against Maria Calabro as successor trustee and alleges breach of fiduciary duty, the fifth count was brought against Joseph Calabro for alleged breach of contract.
The jury returned verdict forms against the estate of Joseph Calabro on the first, second, and fifth counts and against Maria Calabro on the second, third, and fourth counts. The court denied several post judgment motions by the defendants including "Motions to set aside the verdict", id. P. 846. The defendants appealed from the trial court's actions in failing to set aside the indicated verdicts.
The Appellate Court noted that the jury returned a verdict against Maria Calabro on the second count and an interrogatory addressed to that count elicited a negative response from the jury to the question as to whether Maria Calabro made any negligent misrepresentations to the plaintiff. But as the court previously noted the second count was not even brought against Maria Calabro. The Court however did not confine its actions on appeal to the second count. It noted the jury may have been misled by the interrogatories. At one point it said rather interestingly at p. 847: "Particularly, the jury found that the plaintiff had failed to establish negligent misrepresentation by Maria Calabro, individually, and, yet, returned a verdict against her on all counts directed against her." This is an interesting comment since if the plaintiff's successor trustee analysis is accepted or even bailment analysis, fault on the part of Maria Calabro need not be established. The Court then said again not referring to the suspect second count alone: "The verdict forms, the interrogatories, the pleadings and the jury's responses cannot be reconciled" (emphasis added). That the court, in ordering a new trial, was referring to all counts of the complaint is made evident by the discussion on page 848:
 "Under all the circumstances of this case, we cannot say that, had the trial court set aside the verdict as it should have done, it would have been an abuse of discretion for it to have ordered a new trial rather than to have rendered judgment for the defendants . . . . . . It follows that this court cannot order that judgment be rendered for the defendants . . .; but must order a new trial." CT Page 546
The concurring judge was certainly aware that the court was considering all verdicts and the claims made in all counts. He concurred in the order for a new trial but opined, that judgment should be directed for the defendant Maria Calabro individually. In other words, he understood a new trial was being ordered as to all other counts.
What is the function of a trial court when a matter has been reversed on appeal with a mandate to the trial court. Our court has spoken to this issue:
 "In carrying out the mandate of this court the trial court is limited to the specific direction of the mandate as interpreted in light of the opinion . . . This is the guiding principle that the trial court must observe . . The trial court should examine the mandate and opinion of the reviewing court and proceed in conformity with the views expressed therein", West Haven v. Sound Development Corp. , 207 Conn. 308, 312 (1988)
In Mazzotta v. Bornstein, 105 Conn. 242, 243 (1926) the court said: "In carrying out the direction of a mandate, the Superior Court is limited to the specific direction of the mandate as interpreted in light of the opinion.", similar language is found in State Bar Assn. v. CB T Co. 146 Conn. 556, 561 (1959),Nowell v. Nowell, 163 Conn. 116, 121 (1997); Gary Excavating Co.v. North Haven, 163 Conn. 428, 430 (1972); Tucker v. Board ofEducation, 190 Conn. 748, 752 (1983). Also, see recent case ofBauer v. Waste Management of Conn. Inc., 239 Conn. 515, 522
91996); See generally 5 Am.Jur.2d Appellate Review, § 785, cfNigro v. Remington Arms Co Inc., 637 A.2d 983, 988 (Pa Super, 1993).
It is true that it has been said that "upon reversal and remand with general directions for further proceedings, a trial judge is vested with broad discretion in handling or directing the cause thereafter"; Lucon v. Potter, 131 So.2d 724, 726 (Fla, 1961), cited in City of Palm Beach v. State, DOT, 588 So. d. 624, 627 (Fla, 1991). But we are not involved here with "general directions". The court did not say "remanded for further proceedings", nor even "remanded for further proceedings not inconsistent with this verdict." The court quite simply said "Reversed; new trial." CT Page 547
Admittedly, another Superior Court judge permitted the filing of this motion but the court has to interpret the mandate of the Appellate Court and of course give it precedence. Also, from examining the record, it does not appear that the issue of that mandate was ever presented to or considered by the court that allowed the motion to be filed.
There is the added factor that at least in this court's view, the claims against Joseph Calabro and Maria Calabro cannot be effectively separated out. In other words, the claims against Maria Calabro are replete with suggestions that she either violated fiduciary obligations or otherwise acted in improper ways. But, if the plaintiff's position as to bailment (even if it could be made under these pleadings) and to the successor trustee liability of Maria Calabro are examined they are not necessarily dependent on proving any wrong doing on that lady's part. They rather necessarily are predicated on findings and conclusions to be reached regarding the claims against Joseph Calabro and more particularly how, under what circumstances, for what purposes the plaintiff's money came into his hands. Given all of this, how can I as a trial court effectively obey the mandate of the Appellate Court for a new trial as to all counts by parceling out some of the counts for summary judgment treatment? Also, the foregoing reasoning prevents the court from acting on the defendant's cross motion for summary judgment not only as it is directed toward the merits of the plaintiff's claim but also as it raises a statute of limitation issue. The statute of limitations defense was raised in the first trial and not commented on by the Appellate Court. Besides the plaintiff's reply to that defense raises claims of fiduciary obligation and matters that are intrinsic to a resolution of the substantive claims of the plaintiff.
The court certainly does not mean to suggest that whenever new facts arise after a case is reversed and these new matters were not contemplated in the Appellate Court mandate, that such matters can not be dealt with in a manner not contemplated by that mandate, cf Bauer v. Waste Management of Connecticut, Inc.,Connecticut, Inc., 239 Conn. at p. 524. But that is not the case here. As the plaintiff herself noted in objecting to the filing of a counter claim in March 1995: "The plaintiff's Fifth Amended complaint does not create any new cause of action nor has it alleged any additional facts which were not originally proven in the first trial." CT Page 548
But given the age of this case, the fact that both parties appear to be getting on in years and the matter is set down for a court trial, it seems to the court the better part of discretion to give a strict interpretation of the Appellate Court mandate rather than proceed to handle the motions for summary judgment grant one or the other only to run the risk of having the Appellate Court reverse on procedural grounds.
Both motions are denied.
CORRADINO, J.