WILLIAM RADO, JR. *v.* BOARD OF EDUCATION OF THE BOROUGH OF NAUGATUCK
(14057)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, Js.

Argued September 27—decision released December 4, 1990

*William J. Dolan,* for the appellant (plaintiff).

*Thomas N. Sullivan,* for the appellee (defendant).

SHEA, J. The plaintiff, William Rado, Jr., a tenured teacher, appealed, pursuant to General Statutes § 10-151 (f),[1] from the decision of the defendant board

---

[1] General Statutes § 10-151 (f) provides as follows: "Any teacher aggrieved by the decision of a board of education after a hearing as provided in subsection (d) of this section may appeal therefrom, within thirty days of such decision, to the superior court. Such appeal shall be made returnable to said court in the same manner as is prescribed for civil action brought to said court. Any such appeal shall be a privileged case to be heard by the court as soon after the return day as is practicable. The board of education shall file with the court a copy of the complete transcript of the proceedings of the hearing held by the board of education or by an impartial hearing panel for such teacher, together with such other documents, or certified copies thereof, as shall constitute the record of the case. The court, upon such appeal, shall review the proceedings of such hearing and shall allow any party to such appeal to introduce evidence in addition to the contents of such transcript, if it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. The court, upon such appeal and after a hearing thereon, may affirm or reverse the

of education terminating his employment as a physical education teacher and director of athletics at the Naugatuck High School. The trial court affirmed the decision of the board and dismissed the appeal. The plaintiff has appealed from that judgment, claiming three grounds for reversal: (1) certain evidence of the plaintiff's misconduct was barred by General Statutes § 54-142a (a),[2] concerning the erasure of criminal records, and was improperly relied upon by the court; (2) the remaining evidence of misconduct was insufficient to justify the discharge of a tenured teacher for cause pursuant to General Statutes § 10-151 (d);[3] and (3) four

decision appealed from. Costs shall not be allowed against the board of education unless it appears to the court that it acted with gross negligence or in bad faith or with malice in making the decision appealed from."

[2] General Statutes § 54-142a (a) provides as follows: "Whenever in any criminal case, on or after October 1, 1969, the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased upon the expiration of the time to file a writ of error or take an appeal, if an appeal is not taken, or upon final determination of the appeal sustaining a finding of not guilty or a dismissal, if an appeal is taken. Nothing in this subsection shall require the erasure of any record pertaining to a charge for which the defendant was found not guilty by reason of mental disease or defect or guilty but not criminally responsible by reason of mental disease or defect."

[3] General Statutes § 10-151 (d) provides as follows: "The contract of employment of a teacher who has attained tenure shall be continued from school year to school year, except that it may be terminated at any time for one or more of the following reasons: (1) Inefficiency or incompetence; (2) insubordination against reasonable rules of the board of education; (3) moral misconduct; (4) disability, as shown by competent medical evidence; (5) elimination of the position to which the teacher was appointed or loss of a position to another teacher, if no other position exists to which such teacher may be appointed if qualified, provided such teacher, if qualified, shall be appointed to a position held by a teacher who has not attained tenure, and provided further that determination of the individual contract or contracts of employment to be terminated shall be made in accordance with either (A) a provision for a layoff procedure agreed upon by the board of education and the exclusive employees' representative organization or (B) in the absence of such agreement, a written policy of the board of education; or (6) other due and sufficient cause. Nothing in this section or in any other section of the general statutes or of any special act shall preclude

members of the board were biased against the plaintiff and, as his motion for disqualification requested, should not have participated in the proceedings against him. We affirm the judgment.

a board of education from making an agreement with an exclusive bargaining representative which contains a recall provision. Prior to terminating a contract, a board of education shall vote to give the teacher concerned a written notice that termination of such teacher's contract is under consideration and, upon written request filed by such teacher with such board within seven days after receipt of such notice, shall within the next succeeding seven days give such teacher a statement in writing of the reasons therefor. Within twenty days after receipt of written notice by the board of education the contract termination is under consideration, such teacher may file with such board a written request for a hearing. A board of education may designate a subcommittee of three or more board members to conduct hearings and submit written findings and recommendations to the board for final disposition in the case of teachers whose contracts are terminated for the reasons stated in subdivision (5) of this subsection. Such hearing shall commence within fifteen days after receipt of such request, unless the parties mutually agree to an extension, (A) before the board of education or a subcommittee of the board, (B) if indicated in such request or if designated by the board before an impartial hearing panel or, (C) if the parties mutually agree, before a single impartial hearing officer chosen by both parties. If the parties are unable to agree upon the choice of a hearing officer within five days after their decision to use a hearing officer, the hearing shall be held before the board or panel, as the case may be. The impartial hearing panel shall consist of three members appointed as follows: The board of education shall appoint one panel member, the teacher shall appoint one panel member, and those two panel members shall choose a third, who shall serve as chairperson. Within ninety days after receipt of the request for a hearing, the impartial hearing panel, subcommittee of the board or hearing officer, unless the parties mutually agree to an extension, shall submit written findings and a recommendation to the board of education as to the disposition of the charges against the teacher, and shall send a copy of such findings and recommendation to the teacher. The board of education shall give the teacher concerned its written decision within fifteen days of receipt of the written recommendation of the impartial hearing panel, subcommittee or hearing officer. Each party shall pay the fee of the panel member selected by it and shall share equally the fee of the third panel member or hearing officer and all other costs incidental to the hearing. If the hearing is before the board of education, the board shall render its decision within fifteen days after the close of such hearing, and shall send a copy of its decision to the teacher. The hearing shall be public if the teacher so requests or the board, panel or subcommittee so designates. The teacher concerned shall have the right to appear with counsel at the hearing, whether public or

In 1985, the plaintiff was suspended with pay from his positions as a physical education teacher and athletic director at the Naugatuck High School. This action followed his arrest on three counts of eavesdropping in violation of General Statutes § 53a-189,[4] a class D felony, which imposes criminal liability when a person "unlawfully engages in wiretapping or mechanical overhearing of a conversation." These charges were based upon allegations that the plaintiff had intercepted telephone calls involving other personnel employed at the high school.

The plaintiff was tried for the crimes of which he was accused and was acquitted. Following this disposition, the board on March 27, 1987, voted to consider terminating the plaintiff in accordance with the procedure set forth in § 10-151 (d). After being notified of this decision, the plaintiff filed a request for "a statement in writing of the reasons therefor." In compliance with § 10-151 (d), the board furnished such a statement, indicating that it was relying upon "moral misconduct" and "other due and sufficient cause," two of the reasons for termination of a tenured teacher specified by § 10-151 (d). The statement based both of these grounds upon detailed factual allegations that the plaintiff had obtained a recording of a private telephone conversation of a teacher at the high school, had intercepted

---

private. A copy of a transcript of the proceedings of the hearing shall be furnished by the board of education, upon written request by the teacher within fifteen days after the board's decision, provided the teacher shall assume the cost of any such copy. Nothing herein contained shall deprive a board of education of the power to suspend a teacher from duty immediately when serious misconduct is charged without prejudice to the rights of the teacher as otherwise provided in this section."

[4] "[General Statutes] Sec. 53a-189. EAVESDROPPING: CLASS D FELONY. (a) A person is guilty of eavesdropping when he unlawfully engages in wiretapping or mechanical overhearing of a conversation.

"(b) Eavesdropping is a class D felony."

private telephone conversations at the high school and had disclosed the contents of these conversations to others.[5]

Pursuant to the plaintiff's request for a hearing, an impartial panel was appointed, which conducted the hearing and filed a report of its findings and recommendations on August 16, 1988. The panel concluded that the evidence was sufficient to support a recommendation for termination of the plaintiff if certain evidence, which formed the basis for its contingent findings, could be relied upon. A majority of the panel, however, considered this evidence to be barred by the Erasure Act, § 54-142a. Without such evidence, the panel unanimously decided that there was insufficient basis for termination of the plaintiff's employment. Accordingly, a majority[6] of the panel recommended his reinstatement.

Prior to the meeting of the board to act upon the report of the panel, the plaintiff filed a motion to disqualify four members of the board for bias or for a conflict of interests. On August 29, 1988, when the board met to consider the report, the plaintiff argued his motion, which was denied. At the meeting, by a vote of eight to one, in which the four challenged members participated, the board terminated the employment of the plaintiff. In a written decision issued afterward,

[5] The board's statement of reasons for the projected termination of the plaintiff's contract also included allegations concerning his failure to account for money he had collected from a soda dispensing machine at Naugatuck High School and unauthorized absences from work. The impartial panel concluded that the board had failed to sustain its burden of proving any of these allegations.

[6] Two members of the panel took the view that the unanimous contingent findings concerning the plaintiff's tampering with the telephone system could not be relied upon because of the Erasure Act. The third member dissented from the ruling that excluded the contingent finding from consideration and, therefore, disagreed with the recommendation for reinstatement.

the board, in contrast to the panel, concluded that the findings made by the panel based upon evidence not affected by its ruling concerning the Erasure Act were sufficient to prove the grounds for termination relied upon, "moral misconduct" and "other due and sufficient cause," as specified in § 10-151 (d). The board also concluded that a second cause for termination upon the same grounds was independently supported by the contingent findings[7] of the panel relating to the evidence that the plaintiff had tampered with the school telephone system for the purpose of eavesdropping, which a majority of the panel had ruled should not be relied upon because of the Erasure Act.

In considering the plaintiff's appeal from the board's decision terminating his employment, the trial court held, with respect to the claim of disqualification, that the plaintiff had "not shown the existence of personal interests that could reasonably be interpreted as having an improper influence on the board members' duty to base their decisions on the factual findings certified by the panel." The court also declared that the board "could reasonably have concluded that spreading a teacher's personal conversation among other staff

---

[7] The contingent findings were as follows:

"8. We make as a contingent Finding of fact—contingent upon a determination that the Erasure Act does not require us to disregard evidence developed by the police investigation— that the evidence which the Panel Majority deemed inadmissible under the Erasure Act does support the conclusion that Mr. Rado's coming onto the line and listening in as noted in Finding 6 above was part of a deliberate and willful attempt by Mr. Rado to tamper with the telephone system so he could eavesdrop on persons using the Naugatuck High School telephones.

\* \* \*

"13. We make as a contingent Finding of fact—contingent upon a determination that the Erasure Act does not exclude evidence developed by the police investigation—that the evidence which the Panel Majority disregarded under the Erasure Act does support the conclusion that the Finding 10 above came about by a [sic] deliberate and wilful acts by Mr. Rado to overhear telephone calls."

members was moral misconduct" and that playing a tape recording of a teacher's telephone conversation "in the presence of other teachers, particularly those in the same department, constituted other due and sufficient cause." The findings of the panel relating to this incident relied upon by the court did not involve any of the evidence that involved the applicability of the Erasure Act. The court concluded further that the Erasure Act did not preclude reliance upon the contingent findings of the panel relating to tampering with the telephone system and affirmed the board's view that these findings constituted an adequate independent basis for termination.

Because we agree with the trial court that the Erasure Act did not preclude the use of the evidence that the plaintiff had tampered with the telephone system at the high school for the purpose of listening to private conversations of other school personnel, we need not decide whether the board's decision to discharge the plaintiff would be adequately supported without such evidence. We conclude that the contingent findings of the panel, which are based upon that evidence, together with the findings made from the remaining evidence sufficiently establish the statutory grounds for termination relied upon by the board. Thus, we affirm the acceptance by both the board and the trial court of all the facts found by the panel, rejecting only the conclusion of the panel that the use of its contingent findings was barred by the Erasure Act. We also find sufficient support in the testimony before the trial court for its conclusion that none of the board members challenged were disqualified for bias or for a conflict of interests.

I

The evidence on which the panel's contingent findings were based consisted largely of the testimony of

an inspector from the office of the chief state's attorney, Thomas Brady, who investigated the eavesdropping charges against the plaintiff, and of two telephone company employees who assisted Brady. The panel unanimously characterized this evidence as tending "to show that Mr. Rado deliberately created a system enabling him to overhear telephone conversations," but held that the remaining evidence would not alone support such a finding.

Before testifying, Brady had refreshed his recollection from a personal notebook in which he had recorded his observations and other information acquired during his investigation at the high school. The two employees of the telephone company testified concerning their observations of alterations made on the school telephone system since it had been installed, which rendered the privacy devices ineffective. These two witnesses had not examined Brady's notes or any police or prosecution records.

A majority of the panel concluded that the Erasure Act required exclusion or suppression of the testimony of Brady and the two telephone company employees as well as the physical evidence they had discovered, items of telephone equipment that had been altered. Nevertheless, recognizing that this ruling would be subject to review, the panel unanimously made contingent findings of fact indicating that the plaintiff had intentionally tampered with the telephone system for the purpose of overhearing conversations of others using the school telephones.

When a person is found not guilty of a criminal offense or the charge is dismissed, § 54-142a (a) of our Erasure Act requires that "all police and court records and records of any state's attorney pertaining to such charge shall be erased . . . ." In *State* v. *Morowitz,* 200 Conn. 440, 450, 512 A.2d 175 (1986), we indicated our

disinclination "to extend the strictures of § 54-142a beyond the classes of documents and individuals denominated therein" and held that the testimony of the victim of a crime, the prosecution of which had terminated in a dismissal and resulting erasure, was not barred in a subsequent criminal proceeding. We had previously ruled that the term "records" in the Erasure Act did not include photographs obtained by the police at the time of the arrest of a person when the prosecution had later been dismissed, thus triggering erasure. *State* v. *West,* 192 Conn. 488, 496–97, 472 A.2d 775 (1984). Similarly, we have refused to regard the phrase "court records" as encompassing prison records maintained by the department of correction, after a defendant had been pardoned and was thus entitled to erasure. *Doe* v. *Manson,* 183 Conn. 183, 188, 438 A.2d 859 (1981).

The panel recognized that the Erasure Act did not bar the testimony of school employees concerning their observations of events at the school. Because Brady and the two telephone company employees had been called in to investigate the crime charged against the plaintiff and had gained their knowledge wholly as a result of that endeavor, a majority of the panel decided, however, that the Erasure Act required suppression of their testimony as well as the physical evidence they had discovered. We agree with the trial court that this distinction between those whose observations concerning a crime have resulted from an investigation and other witnesses is "unsupportable." The Erasure Act was not intended to obliterate memory or to exclude any testimony not shown to have been derived from erased records. See *Rawling* v. *New Haven,* 206 Conn. 100, 109, 537 A.2d 439 (1988); *State* v. *Morowitz,* supra, 453 (*Shea, J.,* concurring).

The plaintiff does not claim that the two telephone company employees used any record subject to erasure

in testifying before the panel. Accordingly, their testimony was plainly admissible. With respect to Brady, we conclude that his notebook, in which he had recorded certain information obtained during his investigation for later use in preparing the reports he filed, was not a police record, because he was under no duty to make or preserve this record of his field observations. Although § 54-142a (a) subjects to erasure "all police and court records and records of any state's attorney," its reference to police records is more precisely delineated by § 54-142a (e),[8] which directs "any person charged with retention and control of *such records in the records center of . . . any law enforcement agency* having information contained in such erased records" not to "disclose to anyone information pertaining to any charge erased . . . and such . . . person charged with the retention and control of such records shall forward a notice of such erasure to any law enforcement agency to which he knows information concerning the arrest has been disseminated and such disseminated information shall be erased *from the records of such law enforcement agency. . . .*" (Empha-

---

[8] General Statutes § 54-142a (e) provides as follows: "The clerk of the court or any person charged with retention and control of such records in the *records center of the judicial department or any law enforcement agency* having information contained in such erased records shall not disclose to anyone information pertaining to any charge erased under any provision of this section and such clerk or person charged with the retention and control of such records shall forward a notice of such erasure to any law enforcement agency to which he knows information concerning the arrest has been disseminated and such disseminated information shall be erased from the records of such law enforcement agency. Such clerk or such person, as the case may be, shall provide adequate security measures to safeguard against unauthorized access to or dissemination of such records or upon the request of the accused cause the actual physical destruction of such record. No fee shall be charged in any court with respect to any petition under this section. Any person who shall have been the subject of such an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath."

sis added.) The personal notebook of Brady was not a record of a law enforcement agency maintained in its records center, nor is there any indication that he was a "person charged with the retention and control of such records in the records center" of any such agency. We conclude, therefore, that Brady's notebook was not subject to the erasure statute and that his use of it to refresh his recollection before he testified did not require exclusion of his testimony any more than if he had used a newspaper clipping for that purpose.

We agree with the trial court, therefore, that the contingent findings made by the panel, indicating that the plaintiff had intentionally tampered with the school telephone system, were properly relied upon by the board in deciding to terminate the plaintiff's employment contract.

## II

The claim of the plaintiff that the factual findings were insufficient to justify his discharge is based on the premise that the contingent findings of the panel regarding telephone tampering must be disregarded because of the Erasure Act. Our rejection of this premise greatly weakens the plaintiff's argument. The panel agreed with the plaintiff that, without the evidence of tampering, the misconduct found indicated only "bad judgment, bad taste and bad manners" and "is not the kind of conduct which should lead to the forfeiture of a teaching position." It acknowledged, however, that if the evidence developed by the criminal investigation should be considered, "the unanimous judgment of the Panel would have been to recommend termination."

Having concluded that the contingent findings may properly be relied upon, we need not consider the propriety of the conclusion reached by the board that the remaining facts found by the panel provided an adequate basis for termination, as the trial court also

decided. The issue before us is whether the board could reasonably have ordered termination in view of all the facts found by the panel, none of which are challenged as unsupported by the evidence.

Of the six grounds for termination of the employment of a tenured teacher set forth in § 10-151 (d), the board in discharging the plaintiff relied on "moral misconduct" and the catchall, "other due and sufficient cause." We have not previously defined "moral misconduct" for the purpose of § 10-151 (d), nor do we find it necessary in this case to essay a comprehensive definition of that term. The finding of the panel that the plaintiff had tampered with the school telephone system for the purpose of overhearing conversations of other persons involves conduct proscribed by § 53a-189, which makes such eavesdropping a class D felony. A legislative determination that certain conduct should be punished as a crime is highly significant in deciding whether it constitutes "moral misconduct."[9] The conclusion of the board that the plaintiff's behavior fell within this classification, therefore, cannot be characterized as arbitrary or illegal.[10]

---

[9] In *Petrino* v. *Board of Education,* 179 Conn. 428, 426 A.2d 795 (1980), we upheld a decision of a board of education discharging a teacher who had been convicted of a class D felony of second degree larceny on the ground of "due and sufficient cause." Because the board had relied solely on that ground of termination, we did not consider whether the behavior underlying that conviction also constituted moral misconduct. It does not appear from the opinion that such behavior in any manner involved the teacher's school activities.

[10] The board's statement of its conclusion based upon the contingent findings was as follows: "It is the judgment of the Naugatuck Board of Education that tampering with the telephone system at Naugatuck High School so as to enable you to eavesdrop on persons using the telephones at the high school constitutes moral misconduct and/or other due and sufficient cause, i.e., conduct unbecoming a teacher, warranting the termination of your contract of employment. It is the opinion of the Board that such conduct cannot be tolerated for the reasons previously stated with regard to the first stated cause for the termination of your contract."

With respect to the additional ground relied on by the board, "other due and sufficient cause," this court, in *Tucker* v. *Board of Education,* 177 Conn. 572, 577, 418 A.2d 933 (1979), has treated that phrase as equivalent to good cause, citing with evident approval a definition of that term taken from *Rinaldo* v. *School Committee of Revere,* 294 Mass. 167, 169, 1 N.E.2d 37 (1937): "Good cause includes any ground which is put forward by the [school] committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system." In *Tucker,* we declared that "the decision to terminate must be reached after a careful examination of all pertinent factors relating to the particular situation, with due consideration of the effect the teacher's conduct will have on the school authorities as well as on the students."[11] Id., 580. Thus, in deciding whether particular conduct constitutes "due and sufficient" cause for termination, the impact of that conduct upon the operation of the school is a significant consideration. In the present case there is a substantial nexus between the plaintiff's misconduct and the school, since that is where it occurred and its ramifications would be greatest. The conclusion of the board that "[s]uch behavior must necessarily have undermined [the plaintiff's] capacity to effectively work [sic] with fellow staff members, sets an extremely poor example for students and staff and reflects personal values inconsistent with [his] continued employment as a teacher"[12] is supported by the findings of the panel and satisfies this statutory criterion for termination.

---

[11] We held in *Tucker* v. *Board of Education,* 177 Conn. 572, 418 A.2d 933 (1979) (*Tucker I*), that the single instance of disobedience by a teacher there involved was not sufficient cause for termination, although some less severe disciplinary action would have been warranted. See *Tucker* v. *Board of Education,* 190 Conn. 748, 462 A.2d 385 (1983) (*Tucker II*).

[12] On the basis of the findings of the panel not involving the telephone tampering evidence, the board concluded as follows: "It is the judgment

Our function in reviewing the action of the board pursuant to § 10-151 (f) is to determine whether the board has acted illegally and not to substitute our judgment for that of the board. *Tucker* v. *Board of Education,* supra, 583 (*Cotter, J.,* dissenting); *Conley* v. *Board of Education,* 143 Conn. 488, 492, 123 A.2d 747 (1956). A school board "has discretion to accept or reject a recommendation from an impartial hearing panel," though it is bound by the panel's findings of fact unless unsupported by the evidence. *Catino* v. *Board of Education,* 174 Conn. 414, 417–18, 389 A.2d 754 (1978). Because of our conclusion that the contingent findings of the panel could properly be relied upon, the board in this case effectually followed the recommendation of the panel that the plaintiff be discharged on the basis of those findings. The concurrence of these two bodies in viewing the plaintiff's misconduct as warranting termination of his contract is a significant factor supporting the decision. We find no illegality in that determination.

### III

The plaintiff claims that the denial of his motion to disqualify four members of the board deprived him of an impartial tribunal for the hearing on the termination of his employment. We have held that a tenured teacher has a property interest in his employment of which he can be deprived only through procedures complying with due process of law. *Lee* v. *Board of Education,* 181 Conn. 69, 72–73, 434 A.2d 333 (1980). The

of the Board of Education that your behavior as noted in the above referenced findings constitute[s] moral misconduct and/or other due and sufficient cause, i.e., conduct unbecoming a teacher, warranting the termination of your contract of employment. Such behavior must necessarily have undermined your capacity to effectively work with fellow staff members, sets an extremely poor example for students and staff, and reflects personal values inconsistent with your continued employment as a teacher or Athletic Director in this school system."

"hearing" on termination of a tenured teacher provided by § 10-151 (d) must satisfy due process standards. Id., 79. At the core of due process is the requirement for an impartial tribunal. See *Tumey* v. *Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927). "Due process demands . . . the existence of impartiality on the part of those who function in judicial or quasi-judicial capacities." *Petrowski* v. *Norwich Free Academy*, 199 Conn. 231, 235, 506 A.2d 139 (1986); see *Marshall* v. *Jerrico, Inc.*, 446 U.S. 238, 242–43, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980).

It has been generally recognized, however, that due process does not require that members of administrative agencies adhere in all respects to the exalted standards of impartiality applicable to the judiciary. *Schweiker* v. *McClure*, 456 U.S. 188, 197 n.11, 102 S. Ct. 1665, 72 L. Ed. 2d 1 (1982). "The mere appearance of bias that might disqualify a judge will not disqualify an arbitrator." *Florasynth, Inc.* v. *Pickholz*, 750 F.2d 171, 173–74 (2d Cir. 1984); see *Petrowski* v. *Norwich Free Academy*, supra, 237. A presumption of impartiality attends administrative determinations, and the burden of establishing a disqualifying interest on the part of an adjudicator rests upon the one seeking disqualification. *Schweiker* v. *McClure*, supra, 195–96; *Withrow* v. *Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975). To overcome the presumption, the plaintiff in this case must demonstrate actual bias, rather than mere potential bias, of the board members challenged, unless the circumstances indicate a probability of such bias "too high to be constitutionally tolerable." *Withrow* v. *Larkin*, supra.

The trial court allowed the plaintiff to introduce evidence in support of the allegations of bias against four members of the board contained in his motion to disqualify them, which the board had denied. This evidence consisted largely of the testimony of the plaintiff and

of the four members challenged, each of whom, not surprisingly, denied any bias. In his motion the plaintiff claimed that three members, Charles Anderson, Eugene Massa and Frank Klonoski, were personally biased because of various incidents that had occurred in which he had been their antagonist. With respect to a fourth member, Lorraine Dibble, the plaintiff claimed bias on the part of her deceased husband, which gave rise to a conflict of interests on her part. Because the plaintiff does not attack as unsupported by the evidence any of the subordinate facts found by the court in the memorandum of decision, his difficult burden is to show that these facts demonstrate bias as a matter of law on the part of the members challenged.

A

The plaintiff testified that in 1977, eleven years before the hearing on his termination, he and Anderson had been involved in a heated argument that had taken place in the school basement concerning the condition of an athletic field that had been the subject of unfavorable comment in the press. At that time, Anderson was a member of the "facilities" subcommittee of the board. The plaintiff maintained that he had grabbed Anderson and brought him upstairs because of Anderson's use of profanity in the presence of students, whereupon Anderson left the building. Anderson denied being dragged upstairs, but admitted there had been an argument with some swearing. He testified that the plaintiff had pushed him against the lockers. Anderson said that he never felt in danger of being hit by the plaintiff, who, according to Anderson, had cocked his arm at one point during the argument.

Another altercation occurred in 1984 at the board of education office and concerned a telephone for the plaintiff's office at the school, which was claimed to have been ordered without proper authorization. The

plaintiff testified that the argument was heated and involved swearing and pushing. He said he would have struck Anderson but for the intervention of another person, Thomas Bradshaw. Anderson discounted the threatening aspect of the situation, but admitted that he and the plaintiff had leaned against each other while cursing. Bradshaw testified that both men had become upset and used profanity while standing close to each other. He tried to separate them to avoid the possibility of violence, but he did not recall any actual physical contact. It also appeared that Anderson had been called by the state as a potential witness at the trial of the plaintiff at which he was acquitted of the eavesdropping charge. Anderson attended the trial, but did not testify. There is no indication in the record as to the substance of the testimony he might have given.

Anderson denied any animosity toward the plaintiff, whom he had known for twenty years and even professed to like. He said he had based his vote entirely on the panel's report.

The trial court declared that Anderson's conduct "exceeded all bounds of propriety," characterizing him as a man who, like the plaintiff, "feels the need to resort quickly to expletives and body language in order to express his point of view." The court regarded the issue of Anderson's disqualification as "much closer" than that involving the others challenged by the plaintiff, but, nevertheless, found that Anderson was not required to recuse himself. Because Anderson's quarrels with the plaintiff had arisen in the performance of his duties as a member of the board and the subject matter of the disputes concerned the operation of the school, the court viewed the circumstances as similar to those in *Simard* v. *Board of Education,* 473 F.2d 988 (2d Cir. 1973). In that case it was held that prior encounters between board members and a teacher representing a union during "heated [contract] negotia-

tions"; id., 993; in which the teacher had played a central role and had charged some board members with "lack of good faith and ignorance of the subject matter"; id., 995 n.10; did not require a finding of bias on the part of board members, even though the decision to deny tenure "came very shortly after the bitter contract negotiations." Id., 995. The trial court concluded that Anderson's conduct, "being related to the Board's function, was [not] of such a character that the existence of animosity should be inferred."

## B

The plaintiff testified that about five years earlier he had been instrumental in causing Massa to be removed from the list of basketball referees available to officiate at Naugatuck High School games because Massa was a board of education member. He said he had told Massa of this action in a telephone conversation in which Massa sounded angry. He also claimed that Massa was "a political enemy" of the plaintiff's father. Massa testified that he did not recall the telephone conversation referred to by the plaintiff and that he had simply transferred his affiliation to a different organization supplying referees for girls' basketball games. He denied any "bad blood" between himself and the plaintiff's father, but admitted that there had been some disagreements. The court found that Massa had no "recollection of the actions of the plaintiff that were asserted as cause for [his] respective [bias]."

## C

The basis for the plaintiff's charge of bias against Klonoski was his claim to have been instrumental in denying Klonoski a nomination as a Democratic party candidate for the board of education in 1977. Klonoski was not elected to the board until 1979. The plaintiff testified that "unpleasantries were exchanged" when he rejected Klonoski's plea for his vote at the meeting

of the Democratic town committee. Klonoski testified that he did not recall much about the town committee meeting in 1977 "except that he did not seek the plaintiff's help and did not lobby for votes." He also said that he had not been aware that the plaintiff had worked against his nomination, if that had actually occurred. As in the case of Massa, the court found that Klonoski had "no knowledge of the causes asserted for [his recusal]."

## D

The allegation against Lorraine Dibble was that she had "a conflict of interests . . . based in personal bias against [the plaintiff] on the part of . . . Louis Dibble," her deceased husband. The plaintiff testified that, in 1971 and 1972, Louis Dibble, then a member of the board of education, had publicly opposed his application for a teaching position in Naugatuck. The plaintiff said that, at a meeting with Louis Dibble, he was told that he should not be hired as a teacher because of his father's position in politics. According to the plaintiff, he became engaged in a heated discussion with Louis Dibble before the meeting ended.

Lorraine Dibble testified that she had no recollection of the events narrated by the plaintiff as the basis for his claim of bias against Louis Dibble. She had been elected to the board in 1979 after her husband had left the board. At a meeting of the athletic subcommittee of the board with the plaintiff, she, as a member of the subcommittee, had made some inquiries concerning purchases made by the plaintiff that he viewed as critical of him. She claimed to have voted to discharge the plaintiff solely on the basis of the panel's report.

The trial court concluded that "[t]he plaintiff's evidence, even if totally accepted, does no more than . . . cast Mrs. Dibble in the role of a pettifogger when watching out for the Board's affairs." As in the case

of Anderson, the court refused to infer animosity against the plaintiff on Lorraine Dibble's part, finding that her personal contact with him had related solely to her duties as a board of education member. With respect to the claim of bias based on the relationship between Dibble's deceased husband and the plaintiff, the court found that she had no recollection of the events the plaintiff had mentioned. Because the existence of actual bias on the part of a board member presented an issue of fact on which the plaintiff had the burden of proof, the determination of the trial court that the evidence did not establish such bias cannot be overturned, unless the subordinate facts found or the admitted or undisputed facts would require a different conclusion as a matter of law. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980). The court was not obliged to credit the plaintiff's version of the events he relied upon in seeking disqualification. "We cannot retry the facts or pass upon the credibility of the witnesses." *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975). On the basis of the facts found as well as those that are undisputed, we conclude that the court was justified in concluding that actual bias had not been proved on the part of any of the four board members challenged.

Because it is not unusual for board of education members, especially in the smaller communities of this state, to have had some acquaintance with the teachers whose performance they may be called upon to evaluate in contract termination proceedings pursuant to § 10-151 (d), not every prior interaction between a teacher and a board member can reasonably be deemed a sufficient basis for disqualification. If knowledge concerning the character or ability of a teacher gained from service on the board or other past experience were a per se ground for disqualification, such a rule would "require

that decisions as to teacher competence be surrendered to a body less familiar with the relevant considerations and not responsible under state and local law for making those decisions." *Simard* v. *Board of Education,* supra, 993. The legislature has gone far to ameliorate the appearance of impropriety arising from the possibility that board members may be influenced by their own experiences with a teacher whose dismissal is under consideration by providing in § 10-151 (d), upon request of the teacher, for an "impartial hearing panel" to "submit written findings and a recommendation to the board of education as to the disposition of the charges against the teacher." That procedure was followed in this case and has resulted in factual findings unchallenged by the plaintiff that furnish adequate support for the statutory grounds for termination relied on by the board, as we have previously determined. The unanimous recommendation of the panel that the plaintiff should be discharged on the basis of its contingent findings coincides with the board's decision and lends reasonable assurance that, if the plaintiff had never previously encountered any of the board members challenged, the result of his termination hearing would have been the same. We conclude that the trial court did not err in rejecting the plaintiff's claim of partiality on the part of the board.

The judgment is affirmed.

In this opinion the other justices concurred.