[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the Stonington Board of Education's decision of August 23, 1991 to terminate the employment of five Nurse/Teachers. The procedural history of this case is as follows. On June 26, 1991, the Board sent each of the Nurse/Teachers a written notice that, in accordance with General Statutes 10-151, the Board would consider the termination of their employment contracts with the Board. The Nurse/Teachers each requested a statement of reasons for the Board's decision to consider the termination of their contracts. The Board notified the Nurse/Teachers in writing, and advised that the specific reasons for each termination were as follows: CT Page 8606
 1. the, elimination of your position or the loss of your position to another teacher;
 2. other due and sufficient cause. More specifically and by way of amplification:
a. Budgetary considerations;
 b. recommendations which are consistent with established staff reduction procedures and an analysis of program and staffing needs.
Each Nurse/Teacher requested a public hearing regarding the board's considerations of the termination of her contract.
The hearing was held on July 30, 1991 and the plaintiffs were represented by private counsel as the Stonington Education Association (S.E.A.) did not agree with their position and felt that it would be a conflict for its counsel to represent them.
The Board voted, based on the findings and recommendations of the hearing officer, to terminate the plaintiffs' employment contracts. The Board subsequently sent a written notice to the plaintiffs indicating how the Board had voted.
The Nurse/Teachers (hereinafter "plaintiffs") filed this appeal with the court on September 19, 1991. Thereafter, on November 6, 1991 the plaintiffs filed a motion to cite in the Stonington Education Association as an additional defendant. The motion was denied by Hurley, J. on March 6, 1992 on the grounds that the S.E.A. is neither indispensable nor necessary to a determination of the issues in the present case. The defendant then filed a motion to dismiss the plaintiff Heather Kiss' complaint on the grounds that the court lacks subject matter jurisdiction. The court granted this motion from the bench on September 2, 1992, just prior to the hearing, on the ground that the court lacks subject matter jurisdiction because Heather Kiss is not a tenured teacher and thus not entitled to an appeal to the superior court under Connecticut General Statutes 10-151.
In its brief, the plaintiff has framed the following issues:
I. Whether the termination procedures of General Statutes 10-151 were properly invoked. CT Page 8607
II. Whether the board provided the plaintiffs with a proper written decision as required by General Statutes10-151(d).
III. Whether there was an elimination of the Nurse/Teacher positions.
IV. Whether the plaintiffs' terminations were based on an invalid seniority list.
At the hearing, the plaintiffs waived the issues of whether the termination proceedings were properly invoked, and whether the Board's written decision was sufficient to comply with General Statutes 10-151.
The plaintiffs then moved to bifurcate the hearing in order to have a separate hearing to determine damages, if necessary. This motion was granted by the court, without objection.
This appeal is taken pursuant to General Statutes10-151 (f) which provides in relevant part: "Any teacher aggrieved by the decision of the Board of Education after a hearing as provided in subsection (d) of this section may appeal therefrom, within thirty days of such decision. . . ."
"Pleading and proof of aggrievement is a prerequisite to a trial court's jurisdiction over the subject matter of an appeal." Blau v. State Board of Education,19 Conn. App. 428, 430, 562 A.2d 586 (1989). A party is aggrieved if it is established that "there is a possibility, as distinguished from a certainty, that some legally protected interest has been adversely affected." Groton Board of Education v. Commissioner Gerald Tirozzi, 6 CLRT 20 (February 3, 1992, Maloney, J.), citing state Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 300,524 A.2d 636 (1987).
The plaintiffs are appealing from a decision to terminate their contracts of employment as Nurse/Teachers which was made by the Stonington Board of Education after a hearing pursuant to General Statutes 10-151 (d). It is clear that the plaintiffs are aggrieved.
The defendant Board, although it is an administrative agency, acts in a quasi-judicial capacity. As such, "[t]o render decisions, it must weigh evidence and reach conclusions." Conley v. Board of Education, 143 Conn. 488,492, 123 A.2d 747 (1956). (Further citation omitted.) CT Page 8608 It is not the function of the trial court to retry the case, and the credibility of the witnesses and the determination of issues of fact are matters within the Board's province. Id. The court's function, "in reviewing the action of the board pursuant to 10-151 (f) is to determine whether the board has acted illegally and not to substitute our judgment for that of the board." Rado v. Board of Education, 216 Conn. 541,555, 583 A.2d 102 (1990), citing Tucker v. Board of Education, 177 Conn. 572, 577, 418 A.2d 933, (1979) (Cotter, J., dissenting). The plaintiff's have the burden of proving that the record before the board does not support the action it took. Mauriello v. Board of Education, 176 Conn. 466,474, 408 A.2d 247 (1979). Furthermore, a school board may accept or reject a hearing officer's recommendation although it is bound by the hearing officer's findings of fact unless they are unsupported by the evidence. Rado, supra, 555.
In a review of teacher termination proceedings, then, the issue becomes whether the board could have reasonably ordered termination in view of all the facts found by the hearing officer. Id., 553.
I. Elimination of Position
Under General Statutes 10-151 (d) "[t]he contract of employment of a teacher who has attained tenure . . . may be terminated at any time for . . . (5) elimination of the position to which the teacher was appointed or loss of a position to another teacher. . ."
The plaintiffs argue that the board acted illegally in terminating their contracts because their positions were not eliminated. The plaintiffs argue that in order for a position to be eliminated the duties which are attached to that position must no longer exist since the hearing officer found that some of the duties of the Nurse/Teachers were being shifted to other personnel, the plaintiffs argue, then their positions have not been eliminated, and that is required to legally terminate their contracts under General Statutes 10-151 (d) (5). The plaintiffs cite Yaffe v. Board of Education, 34 Conn. Sup. 115, 380 A.2d (1977) in support of their contention. However, Yaffe does not stand for the proposition the plaintiff sets forth land is inapposite.[1]
The plaintiffs do not set forth any relevant Connecticut case law to support their argument. If the court were to accept the plaintiffs' interpretation of General Statutes 10-151 (d) (5) then, for example, a school board could not validly reduce the number of history, teachers, from six to five in order to alleviate budgetary pressures, unless, CT Page 8609 duties were eliminated. Under the plaintiffs' interpretation, the history teacher's position would not be "eliminated" because the duties of that history teacher were not eliminated but merely shifted to the other five teachers. The plaintiffs' interpretation of General Statutes10-151 (d) (5) is erroneous.
"[W]ide discretion is customarily vested in school boards with regard to the employment of teachers." Yaffe supra, 120, citing General Statutes 10-151 and 10-220. The courts should not interfere with this discretion if it is exercised in good faith. Yaffe, supra, 120.
The hearing officer found that there was a budgetary crisis for the 1991-92 school year that necessitated the elimination of numerous programs, the increase of class sizes, and the elimination of twenty full-time equivalent teaching positions. (H.O. Report, P. 7). The decision of the Board to try to work within its budgetary constraints by eliminating the positions of Nurse/Teacher was well within its discretion.
There is ample support in the record to support the Board's determination that the plaintiffs' positions have been eliminated.
II. Invalid Seniority List
Next the plaintiffs argued that the Board acted illegally in terminating their particular contracts because the Board acted pursuant to an invalid seniority list.
Once a Board has determined that it is necessary to terminate teachers' contracts because of elimination of position, General Statutes 10-151 (d) (5) provides that "the determination of the individual contracts or contract of employment shall be made in accordance with . . . (A) a provision for a layoff procedure agreed upon by the Board of Education and the exclusive employees' representative organization."
In order to address this issue, it is necessary to summarize the somewhat complicated history of the relationship between the Nurse/Teachers, the Stonington Board of Education and the S.E.A.
Under General Statutes 10-153 (b) (2) teacher's employed by a board of education belong to a "bargaining unit." General Statutes 10-153 (b) (2) defines who comes within the purview of this bargaining unit according to the CT Page 8610 certification requirements of the position which they hold. A majority of the bargaining unit may then select a representative, General Statutes 10-153 (c). The Stonington Teachers bargaining unit is represented by the S.E.A.
The crux of the difficulty which caused this issue to be before the court is that, for reason not apparent from the record, the Nurse/Teachers had not been included in the teachers bargaining unit although their positions arguably bring them within the purview of the statute. The following findings were made by the hearing officer: Prior to the summer of 1989 the Nurse/Teachers had their own bargaining unit and bargained with the Board of Education concerning salaries and other conditions of employment; the plaintiffs, went to the head of the S.E.A. stating that they wanted to join the Association; the head of the S.E.A. proposed to the Board that the Nurse/Teachers be included in the bargaining unit and the Board objected and filed a Unit Clarification Petition to the State Board of Education; prior to decision on this petition the S.E.A. and the Board entered into a memorandum of agreement with respect to the Board's petition for unit clarification. Section 6 of the Memorandum of Agreement provides: "seniority for purposes of time as a Nurse/Teacher within the contract and with the Association shall commence effective August 29, 1989." The Memorandum of Agreement further provided that the Nurse/Teachers would be governed by the Collective Bargaining Agreement, "CBA" between the Board and the Association except for a few provisions mentioned therein. The Memorandum of Agreement provided that its terms would be effective from August 29, 1989 through August 31, 1990. A seniority list was calculated and agreed upon by the Board and the S.E.A. pursuant to Article 38 of the CBA.
The board determined which teachers' contracts to terminate according to the seniority list which was agreed upon by the Board and the S.E.A. As the plaintiffs were the lowest on the list, the Board terminated their contracts.
The plaintiffs argue that although the board acted pursuant to a seniority list agreed upon by the Board and the S.E.A. which is required by the Collective Bargaining Agreement, the seniority list was improperly calculated. It was improperly calculated, the plaintiffs argue, because it was calculated according to the seniority provision in the Memorandum of Agreement, which by its own terms had expired, rather than the seniority provisions of the Collective Bargaining Agreement.
As stated earlier, under General Statutes CT Page 861110-151 (d)(5) the Board must look to the Collective, Bargaining Agreement to determine which teachers' contracts to terminate. The relevant provision of the CBA, between the S.E.A. and the Board during the period of 1990-93 is Article 38 "Reduction in Force and Recall" which reads in part:
 3. In the event it appears necessary to terminate teacher contracts in order to effectuate the elimination of professional staff positions, the Superintendent will propose elimination of positions, identifying professional personnel whose contracts he/she recommends for termination. If the Board considers termination of the contract of a teacher, it shall authorize the Superintendent to notify the teacher in writing. This notification, and any subsequent proceedings with regard to contract termination, will be in accordance with the provisions set forth in the Connecticut Teacher Fair Dismissal Law (Section 10-151 of the Connecticut General Statutes) and shall not be subject to the grievance and arbitration provisions of this Agreement.
 4. The following criteria will be used to select those employees whose contracts are to be considered for termination as a consequence of elimination of professional staff positions:
 (a) Tenure Status: If a teacher has attained tenure status, his/her contract of employment may be terminated if his/her position is eliminated, but only if there is no other position available in the school system for which the teacher is certified and qualified. Therefore, teachers who have acquired tenure will have first preference for retention in positions for which they are certified and qualified.
 (b) Other Criteria: Within the separate categories of tenured teachers and non-tenured teachers, the following criteria will be considered:
CT Page 8612 i. Areas of Certification;
 ii. Teaching Experience in Other Positions Which May Be Available;
 iii. Qualifications and Availability, As Determined by Evaluation of the Teacher's Performance;
 iv. Total Years of Experience in the School System;
v. Degree status;
 vi. Total Years of Experience in Teaching.
 (c) Within these criteria and when two or more positions must be eliminated with a consequent reduction in staff, when in the judgment of the Superintendent, staff members under consideration for layoffs have similar skill and ability, then in that event the least senior teacher in the Stonington School System shall be laid off. Seniority will be determined by using total years of service in the Stonington Public Schools, regardless of whether such service is continuous or interrupted.
 A seniority list will be developed and agreed to by both parties.
The plaintiff's urge this court to find that the Board's responsibility under General Statutes 10-151 (d) (5) goes beyond merely following a seniority list developed and agreed to by the S.E.A. and the Stonington Board of Education. In effect the plaintiffs invite this court to undertake a detailed contract interpretation with very few relevant facts before it. It is unnecessary for the court to do so for the following reasons:
The plaintiffs' argument defeats itself. There was never a ruling on the unit clarification petition. The plaintiffs' inclusion in the bargaining unit came about by virtue of an agreement between the Board and the S.E.A. They memorialized this agreement in the Memorandum of Agreement discussed earlier. This Agreement also contained the CT Page 8613 seniority provisions by which the Board and the S.E.A. calculated the seniority list. The plaintiffs' assert that the Memorandum of Agreement expired by its own terms, and, therefore the Board should have looked to the CBA to calculate seniority.
This argument fails because if the Memorandum of Agreement had expired then the Agreement that the Nurse/Teachers were included in the bargaining unit would no longer be in effect. The CBA covers only members of the bargaining unit and, therefore, the CBA would not govern the dismissal of the Nurse/Teachers.
Furthermore, both parties conceded at the hearing that the calculation of the seniority list was subject to the grievance and arbitration provisions under Article 28 of the CBA. The plaintiffs did not pursue a grievance under the CBA although the record clearly reflects they knew of the seniority list prior to the termination proceedings.
To adopt the arguments which the plaintiffs press upon this court would require inquiry into areas far beyond the record of this case. There is no adequate record upon which to resolve the issues of collective bargaining, labor relations, unit clarification and exhaustion of administrative remedies implicated by plaintiffs' position. To do so might well involve the issue of the court's subject matter jurisdiction as well as the issue of the rights of parties to the CBA who are not presently before the court.
However, this inquiry is unnecessary as the Board acted pursuant to a seniority list agreed upon by the S.E.A and the Board, and the court finds that the Board acted in compliance with General Statutes 10-151 (d) (5).
Accordingly, the plaintiffs' appeal is dismissed.
Koletsky, J.