[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Timothy Kennedy appeals the decision of the defendant plumbing piping examining board suspending his license for ninety days and imposing a civil penalty of $42,000. The board acted pursuant to General Statutes §§ 20-334 and20-341. The plaintiff's appeal is authorized by § 4-183. The court finds the issues in favor of the defendant board.
This case has an unusually long procedural history, which affects some of the issues raised in this appeal. The plaintiff is a licensed plumber. During 1991, he and his employees installed water lines for drinking water in a public housing project in the town of Sharon. Shortly thereafter, an inspector for the defendant board inspected the plaintiff's work and determined that the solder used to join the pipes contained lead in excess of the level permitted by law.
On January 23, 1992, the board issued a complaint alleging the use of illegal lead solder and summoning the plaintiff to a hearing on March 26, 1992. The hearing was conducted before five members of the board, including the chairman. The plaintiff appeared pro se and testified, and he also cross-examined adverse witnesses, including the board's inspector and a former employee. Both the board and the plaintiff submitted documentary evidence as well.
Following the hearing, on May 29, 1992, the board issued its decision. The board found that the plaintiff used solder containing an illegal amount of lead in making 350 joints and fittings and in repairing 20 leaks in pipes. The board held that each instance constituted a separate violation. Stating that the maximum penalty under General Statutes § 20-341 (b) would be in excess of $500,000, the board imposed a civil penalty of $50,000. The board also ordered the suspension of the plaintiff's plumber's license for ninety days.
The plaintiff appealed the board's decision to this court, CT Page 1488 which, on May 6, 1994, rendered its decision remanding the case to the board for further proceedings and a new decision. The court ordered the board to render a modified decision that (1) states the statutory and/or regulatory basis for the imposition of the civil penalty and (2) states the precise number of violations and the dates when they occurred. The court did not otherwise address the issues raised by the plaintiff in his appeal.
On April 18, 1995, the board notified the plaintiff that it would hold a hearing on May 25, 1995, "pursuant to the Memorandum of (this court's) Decision . . . The purpose of this meeting will be to determine when lead solder was used on the pipes in the public housing project in Sharon, Connecticut." The notice stated that the plaintiff had the right to appear and be represented by counsel. Service of the notice on the plaintiff was effected by abode service by a deputy sheriff.
On May 25, 1995, the board convened a hearing in accordance with the above notice. In addition to board members and staff, two former employees of the plaintiff, Mark Grant and David Pergola, appeared as witnesses and testified, as did board investigator John Lynch. The plaintiff did not appear.
Following the hearing, on May 31, 1995, the board rendered a modified decision. The board found that on eight days in July 1991, the plaintiff, acting through his employees, "used solder containing more than 0.2% lead in making 84 joints on the potable water supply system in 3 of the 6 buildings at the Sharon Housing Project in Sharon, Connecticut. The total of 84 is based upon 28 joints in each building."
The board concluded that the plaintiff's use of leaded solder constituted a violation of General Statutes § 25-39e(a) and "constitutes incompetent work." The board reasoned that the violation of § 25-39e(a) of the general statutes and the performance of "incompetent work" constituted violations of Regs. Conn. State Agencies §§ 20-332-16 and 20-332-18a(f). Such violations of the regulations, the board held, triggered sanctions under General Statutes § 20-341 (b), providing for civil monetary fines, and § 20-334, providing for license suspension. The penalty for a "first violation" under §20-341 (b) is $500. The board determined that each use of the leaded solder constituted a separate violation and that the appropriate penalty in this case would be $500 for each of such CT Page 1489 84 violations for a total of $42,000. The board also determined that the plaintiff's license should be suspended for a period of ninety days.
Following receipt of the board's modified decision, the plaintiff contacted the board, claiming that he had not received notice of the hearing and requesting an opportunity to be heard. He and the board then reached an agreement that he would be given an opportunity to be heard but would waive the opportunity to cross-examine the witnesses who had testified at the May 25, 1995, hearing. The board thereupon reopened the hearing on July 27, 1995, and the plaintiff appeared pro se and testified in his own behalf.
Subsequent to the reopened hearing, the board rendered yet another decision, on November 17, 1995, in which it affirmed the findings and conclusions of the May 31 modified decision. The board also affirmed the penalties imposed in the May 31 decision. The November 31, 1995, decision is the subject of this appeal. The parties have submitted the appeal to the court for decision without oral argument. In his brief, the plaintiff advances a number of arguments in support of his appeal, and the court addresses each separately below.
Insufficient Notice
The plaintiff claims that the board did not adequately notify the plaintiff in advance of the hearing that it would consider each instance of using leaded solder to be a violation subject to civil monetary fine. Since he didn't anticipate that the board would take that position, resulting in the imposition of the large fine, the plaintiff argues, "he did not retain counsel to advise him or accompany him to the hearing."
The plaintiff's brief does not make clear which notice he claims was defective. The notice of charges summoning the plaintiff to the first hearing in March 1992 clearly set forth the basis of those charges, the use of leaded solder at the work site in Sharon, and the statutes and regulations invoked by the board. In particular, the board specified General Statutes §20-341, which is the statute providing the civil penalty in question. The court considers the notice completely adequate in that regard. The notices for the subsequent hearings held after the remand by this court, while less detailed, were nevertheless sufficient under the circumstances. The plaintiff had actual CT Page 1490 notice of the board's position with respect to the imposition of the civil penalty; indeed, in its first decision and in its brief in response to the plaintiff's appeal of that decision, the board set forth its position on the issue in detail. In the court's view, the plaintiff was at all times fully apprised of the possibility that the board would interpret the statute as it did.
Excessive Fine
General Statutes § 20-341 (b) provides in relevant part as follows:
 The appropriate examining board may, after notice and hearing, impose a civil penalty on any person . . . who violates any of the provisions of this chapter or the regulations adopted pursuant thereto. Such penalty shall be in an amount not more than five hundred dollars for a first violation of this subsection, not more than seven hundred fifty dollars for a second violation and not more than one thousand five hundred dollars for each violation of this subsection occurring less than three years after a second or subsequent violation of this subsection. . . .
General Statutes § 25-39e(a) provides as follows:
 No solder containing more than 0.2 per cent lead shall be used in making joints and fittings in any public or private potable water supply system or any water user's pipelines.
Regs. Conn. State Agencies § 20-332-16 (a), as in effect during all times relevant to this appeal, provided as follows:
 Any licensee who installs, performs or directs the performance of work in violation of any applicable state statute . . . shall be subject to disciplinary action by the appropriate board.
As noted, the board interpreted this statutory/regulatory scheme as authorizing the board to impose a civil penalty of $500 CT Page 1491 for each joint or fitting on which the plaintiff had used illegal lead solder in violation of § 25-39e(a). Specifically, the board determined that a violation of § 25-39e(a) of the statutes subjects the violator to "disciplinary action" by the board pursuant to § 20-332-16 (a) of the regulations. Such disciplinary action may include, in the board's view, a civil penalty under § 20-341 (b) of the statutes for each such illegally soldered joint or fitting.
In his brief to the court on appeal, the plaintiff does not contend that the board erroneously drew a connection from §25-39e of the statutes, through § 20-332-16 of the regulations, to § 20-341 of the statutes. So that issue is not before the court. Rather, the plaintiff argues that the board interpreted § 20-341 of the statutes so as to impose an excessive penalty. Specifically, he contends that the board erroneously concluded that each application of illegal solder constituted a separate violation of the law for which a civil fine is authorized under § 20-341 (b). This argument essentially disputes the interpretation of § 20-341 (b), not its applicability to violations of § 25-39e.
"Although the construction and interpretation of a statute is a question of law for the courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement." Starr v. Commissioner of Environmental Protection,226 Conn. 358, 372 (1993). "This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations." Griffin Hospital v. Commission on Hospitalsand Health Care, 200 Conn. 489, 497 (1986). It is undisputed that the board is responsible for enforcing the statutes and regulations in question. This court is required, therefore, to accord great deference to the interpretation of those statutes and regulations given by the board. This does not mean that the court must abdicate its adjudicative function in interpreting the law, but it does mean that where there are different but equally plausible interpretations of a statute or regulation, the court must give due deference to that followed by the administrative agency concerned. Starr v. Commissioner, supra 376. Where, on the other hand, the court determines that an agency's interpretation of a statute is not plausible or reasonable, the court should not defer to such interpretation. Bridgeport Hospital v. Commissionon Human Rights and Opportunities, 232 Conn. 91, 109-110. CT Page 1492
The court has considered the arguments of the parties on the issue of calculating the penalty permitted by § 20-341 (b) under the circumstances of this case. The plaintiff urges the court to overrule the board's interpretation of the statute and hold, instead, that the plaintiff committed only one violation. Under his interpretation, the plaintiff would aggregate the many separate acts of illegal soldering, resulting in a single violation and a fine of only $500.
The interpretation of the statutory/regulatory scheme urged by the plaintiff is undeniably one that can plausibly be made. Essentially, the plaintiff contends that the board should regard all violations of § 25-39e occurring during the course of a single job as one violation for purposes of § 20-341 (b). In general, such an argument for grouping multiple violations could produce a variety of results, depending upon the common link that an adjudicator might choose. Under this general approach, the statutes might be interpreted to mean that all the violations committed on a particular day constituted a single violation for purposes of § 20-341 (b), or all the violations committed in a particular building. The point is that the plaintiff has urged the court to adopt one plausible interpretation of the statutory/regulatory scheme out of several such interpretations and reverse the board because it did not agree. The plaintiff's contention requires the court to review the board's interpretation to determine whether it is equally reasonable and plausible.
The board, in essence, declined to aggregate the separate violations of § 25-39e under any common umbrella and, instead, penalized the plaintiff for each application of the illegal solder. In the court's view, this approach is not illogical or unreasonable. The use of illegal solder on only one joint would have required a conscious, deliberative act by the plaintiff, distinguishable from other actions in performing his work on the job. Such an act, applying the illegal solder, would clearly have been a violation, albeit a single violation, but nevertheless punishable under the statutes. It is logical, therefore, to say that multiple applications of the illegal solder, each one requiring a separate act by the plaintiff, constituted multiple violations, each one punishable as though it were a single violation. Such an interpretation, though different from that argued by the plaintiff to be sure, is not implausible or unreasonable. It follows, under the rule of the Starr andBridgeport Hospital cases, supra, that the court must defer to CT Page 1493 the board's interpretation.
The board's interpretation obviously produces a harsh penalty in this case, and other adjudicators might well have imposed one that is arguably as effective but less financially burdensome. The court cannot substitute its judgment for that of the board, however, when, as here, the penalty is within the range authorized by statute.
The plaintiff also argues, with respect to the board's interpretation of the statutes, that the board was required first to have promulgated regulations adopting that interpretation. This argument misconstrues the board's function in this case. As it points out in its brief, the board was acting in an adjudicative role rather than in a legislative role. As such it was empowered to interpret and apply the statutes and regulations to the facts that it found after a hearing. It was not required, however, to have anticipated the particular fact pattern in advance and promulgated regulations to fit.
Sufficiency of Evidence
The plaintiff argues that there was insufficient evidence to support the board's finding that the plaintiff used the illegal solder in a manner prohibited by the statute. Specifically, he argues that the evidence shows that he only "dressed" the joints in the water piping with the illegal soldering; that is that he merely painted the leaded solder over other, legal, solder that was used to make the actual sealed joint. He claims that the function of this dressing was only cosmetic and that it was not "used in making joints and fittings" as proscribed by §25-39e. The plaintiff's argument in this regard is one of mixed fact and law.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." CT Page 1494
"The `substantial evidence' rule governs judicial review of administrative factfinding under General Statutes § 4-183. . . An administrative finding is supported by `substantial evidence' if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred . . . Such a standard of review allows less room for judicial scrutiny than does the `weight of the evidence' rule or the `clearly erroneous' rule . . . In determining whether an administrative finding is supported by `substantial evidence,' a court must defer to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part (Citations and internal quotation marks omitted). Briggs v. State EmployeesRetirement Commission, 210 Conn. 214, 217 (1989). "If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must be upheld." Conn. Building Wrecking Co. v.Carrothers, 218 Conn. 580, 601 (1991).
Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public UtilityControl, 219 Conn. 51, 57-58 (1991).
In the present case, testimony at the several hearings conducted by the board, including testimony of the plaintiff, established that the plaintiff or his employees applied illegally leaded solder to joints and fittings on water pipes as part of the installation of the drinking water system in the housing project. There was testimony that the leaded solder was used specifically on joints that developed leaks after being soldered with legal solder. The court concludes that there was substantial evidence to support the board's finding concerning the use of illegal solder. Furthermore, the court concludes that the board was not required to adopt the narrow reading of § 25-39e
urged by the plaintiff. Specifically, the board's interpretation of that statute as prohibiting the use of illegal solder as "dressing" on joints and fittings was well within its discretion.
General Statutes § 4-179
The plaintiff argues that the board failed to comply with the requirements of § 4-179 in that a majority of the members of the board who rendered the final decision had not attended the CT Page 1495 hearing or read the record. There is no evidence of such delinquency, however. To the contrary, the decision of the board recites that "After review of the entire record, a majority of the Board members who are to render the Modified Decision voted" on it. (Emphasis added.) The plaintiffs argument may not be sustained in the absence of even a preliminary showing that the board failed to comply with the law.
Union Membership
The plaintiff argues that he does not operate a union shop, and since a majority of the board members who decided his case are union members, he was denied a fair hearing before an unbiased tribunal.
"It has been generally recognized . . . that due process does not require that members of administrative agencies adhere in all respects to the exalted standards of impartiality applicable to the judiciary . . . A presumption of impartiality attends administrative determinations, and the burden of establishing a disqualifying interest on the part of an adjudicator rests upon the one seeking disqualification." Rado v. Board of Education,216 Conn. 541, 556 (1990).
This rule is in line with the more general presumption that public officials are presumed to have done their duty until the contrary appears. Leib v. Board of Examiners for Nursing,177 Conn. 78, 84 (1979).
The burden of proof is, of course, on the person making the accusation and it is a heavy burden. The person must demonstrate either actual bias or the existence of circumstances indicating "a probability of such bias too high to be constitutionally tolerable." Rado v. Board of Education, 216 Conn. 541, 556
(1990). The plaintiff has made no such demonstration in this case, and his argument may not be sustained.
For all of the reasons set forth above, the decision of the board, as modified after remand, is affirmed, and the plaintiff's appeal is dismissed.
MALONEY, J. CT Page 1496
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 1499